# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 44418

STATE OF IDAHO, IDAHO STATE
BOARD OF LAND COMMISSIONERS,
and IDAHO DEPARTMENT OF LANDS,

    Plaintiffs-Counterdefendants-
    Respondents,

v.

PHILIP HUDSON,

    Defendant-Counterclaimant-
    Appellant.

Boise, September 2017 Term

2017 Opinion No. 121

Filed: December 4, 2017

Karel A. Lehrman, Clerk

Appeal from the District Court of the First Judicial District of the State of Idaho, Bonner County. Hon. Barbara Buchanan, District Judge.

The district court's grant of partial summary judgment in favor of respondent is <u>affirmed.</u> Costs and attorney fees on appeal are <u>awarded</u> to respondent. This case is <u>remanded </u>to the district court for further action on any remaining issues.

John F. Magnuson, Coeur d'Alene, attorney for appellant.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, attorney for respondent. Angela S. Kaufmann argued.

_____

JONES, Justice.

## I. NATURE OF THE CASE

In a case arising out of Bonner County, Philip Hudson ("Hudson") appeals a district court's grant of partial summary judgment in favor of the State of Idaho, the Idaho State Board of Land Commissioners and the Idaho Department of Lands (collectively, the "State"). The district court found that Hudson violated the Idaho Lake Protection Act (the "LPA") when he placed fill in the bed of Priest Lake without a permit. Specifically, the district court held that the State had jurisdiction of Priest Lake up to an elevation of approximately 2437.64 feet, and

1

Hudson's fill was placed within that elevation. Hudson disputes the location of the Ordinary High Water Mark (the "OHWM") and argues that the fill was placed on his own property to protect it from erosion. Hudson argues that there was an issue of material fact regarding the location of the OHWM, which made summary judgment improper.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Priest Lake has been a navigable lake since Idaho became a state in 1890. In approximately 1950, the State of Idaho constructed a dam on Priest Lake, which has stabilized the lake elevation at approximately 2437.64 feet from July to September since 1951. In 2014, the State investigated a complaint which alleged that Hudson encroached on Priest Lake by placing fill in an area adjacent to his property. The fill extends approximately nineteen feet waterward of the 2437.64 foot elevation. Hudson did not apply for a permit prior to placing the fill, and refused the State's request that he remove it.

On July 13, 2015, the State filed a verified complaint alleging two causes of action against Hudson: (1) that he violated that LPA by placing unauthorized fill in Priest Lake, and (2) a trespass action. Hudson answered the complaint and asserted counterclaims for declaratory relief and quiet title to the land in dispute. Hudson argued that the area in question was his property because it was located upland of the OHWM of Priest Lake at the time Idaho became a state.

In April 2016, the State moved for partial summary judgment, arguing that the LPA grants the State regulatory authority over the fill that is the subject of this litigation, regardless of the location of the natural or ordinary high water mark of Priest Lake, because such fill is located on the bed of a navigable lake as defined by Idaho Code section 58-1302(b). In support of its motion, the State filed a memorandum which asserted that the State's regulatory authority under the LPA extends to any lands lying below the Artificial High Water Mark (the "AHWM") and above the OHWM, which would give it jurisdiction over the land beneath Hudson's fill.[1] The State argued that Priest Lake has been maintained at an approximate elevation of 2437.64 feet during the summer months since 1951, and considers that to be the high water mark, whether artificial or natural. The State asserted that the 2437.64 foot line represents the point at which the bed of the lake is regulated by the State. The State supported this argument with affidavits of

---

[1] The State disputed the presence of an AHWM on Priest Lake. However, the State maintained that the distinction between the OHWM and the AHWM was not germane to its argument because the State controlled the area in dispute under either.

Mick Schanilec and Matthew Anders. Mr. Schanilec, the area manager for the Priest Lake Supervisory Area, testified that the State administers the LPA at Priest Lake to the elevation of 2437.64 feet, which is where the State considers the natural or ordinary high water mark to be.

Ultimately, the State argued that the material Hudson placed encroached upon State controlled land, and that the district court should issue an injunction requiring Hudson to:

> (a) remove all unauthorized fill below elevation 2437.64 feet msl during the low water period of Priest Lake, between about November 1 and March 1; (b) stabilize any unstable bank or lake bed remaining landward of elevation 2437.64 feet msl of Priest Lake; and (c) perform any other measures recommended by [the State] designed to contain sediment and erosion and to restore Priest Lake to as near its condition immediately prior to the unauthorized encroachment as possible.

The State additionally requested a permanent injunction preventing Hudson from encroaching upon, in, or above the waters of Priest Lake unless approved by the State, and that he be required to pay a $10,000 fine for his violation of the LPA.

Hudson filed a memorandum opposing the State's motion for partial summary judgment, disputing the location of the OHWM and arguing that a material issue of fact existed as to whether or not the encroachments at issue were located on his property or the property of the State. Hudson argued that he placed the natural improvements on his own property, which was located between 2435 and 2437.64 feet. In support of his opposition to the State's motion, Hudson provided declarations of Ernest Warner, himself, and Drew C. Dittman. Mr. Warner, a licensed surveyor, testified that he believed and concluded that the OHWM of Priest Lake, as of July 3, 1890, was at least two vertical feet lower than the 2437.64 foot elevation, the artificial level now maintained during the summer months. Further, Mr. Dittman, a professional engineer, testified that if the boundary line between the Hudson parcel and the State-owned bed of Priest Lake was extended nineteen feet waterward of the summer pool level maintained on Priest Lake, then most, if not all, of Hudson's improvements would be located on his property as opposed to the State of Idaho. Hudson argued that the State bears the burden of proving that his encroachments are located waterward of the OHWM of Priest Lake. Ultimately, Hudson concluded that the:

> State has failed to show that Hudson's encroachments were located below the OHWM of Priest Lake. Defendant Hudson further submits that the State is estopped to seek relief on the basis that his encroachments are located below an AHWM of Priest Lake, having specifically and emphatically denied, under oath, that there is an AHWM on Priest Lake. Hudson requests that all relief sought by the State on summary judgment be denied and that the matter be set for trial

3

wherein the State will be required to prove that Hudson's encroachments are in fact below the OHWM of Priest Lake as it existed on July 3, 1890.

On June 15, 2016, the State responded with a Second Affidavit of Mr. Schanilec ("Second Schanilec Affidavit"). On June 17, 2016, Hudson moved to strike the Second Schanilec Affidavit because it did not comply with the timeframe set forth in I.R.C.P. 56(c). The State responded, arguing that a party is permitted to file a reply brief seven days before a summary judgment hearing, and that the brief may be accompanied by an affidavit in support.

On June 22, 2016, the district court heard arguments from the parties regarding the State's motion for partial summary judgment. At the outset, the district court recognized the arguments made regarding the OHWM and the AHWM of Priest Lake, and advised the parties as follows:

> I looked at the statute that requires the lake to be kept up the additional three feet during the summer months. But I guess what I'm most struck by is Idaho Code 58-1302 and the issue of navigability and encroachments. And I'm not sure whether it matters whether we're talking about the [OHWM] or the [AHWM] when you look at 58-1302(b) and (h) and (i).

During oral argument the State reiterated what it set forth in its briefing, and reasoned that for the purposes of its motion, it was irrelevant whether they were talking about the OHWM or the AHWM, because under the LPA, parties are required to obtain a permit before encroaching on a navigable lake. The State argued that because Hudson failed to obtain a permit prior to placing fill in the lake bed, he violated the LPA. Hudson argued that the OHWM at statehood was two and one half feet lower than the summer level, which would result in his property extending approximately nineteen feet further into Priest Lake, and nearly all of his encroachments fall within those nineteen feet. Hudson argued that the State was in a unique procedural posture because it had specifically denied the existence of an AHWM, and had testified that the OHWM is 2437.64 feet. Hudson contended that he had offered evidence to contradict the State's location of the OHWM and that if the State was going to allege that Hudson's encroachments were waterward of the OHWM, the dispute regarding the location creates an issue of material fact.

On June 30, 2016, the district court issued its memorandum decision and order granting the State's motion for partial summary judgment. The district court first determined that the fill placed by Hudson was an encroachment not in aid of navigation. The district court next found that the State has the power to regulate and control navigational and non-navigational

4

encroachments, and that a permit is required before a person may place an encroachment into the bed of Priest Lake. In response to Hudson's argument that the AHWM is higher than the OHWM in the summer months, and his property extends to the OHWM as it existed in 1890, the district court found:

> [T]hat pursuant to the definition of a lakebed in Idaho Code § 58-1302, it does not matter whether the fill is located below the OHWM, or between the OHWM and the AHWM, if there is one; because the statute makes clear that the State of Idaho has the power to regulate and control encroachments on land lying between the OHWM and the AHWM.
>      Accordingly, the State of Idaho has the power, as a matter of law, to regulate and control encroachments in or above the bed of Priest Lake by requiring that a lake encroachment permit be obtained before construction of a nonnavigational encroachment such as the fill at issue here.

Additionally, the district court acknowledged that it did not utilize the Second Schanilec Affidavit in rendering its decision, and as a result, considered Hudson's motion to strike moot.

The district court issued a mandatory injunction requiring Hudson to: (1) remove all unauthorized fill below the high water mark, regardless of whether it is natural or artificial; (2) stabilize any unstable bank or lake bed; and (3) perform any other measures recommended by the State to restore the lake to as close to its original condition as possible. The district court also issued a permanent injunction requiring Hudson to refrain from encroaching upon, in, or above the beds or waters of Priest Lake, absent prior approval from the State. [2]

The parties stipulated to a stay of further action on the remaining claims pending an appeal, and the district court entered an amended partial judgment certified as final pursuant to I.R.C.P. 54(b). Hudson timely appealed.

### III. ISSUES ON APPEAL

1. Whether the district court erred when it granted the State's motion for partial summary judgment despite the dispute regarding the location of the OHWM.

2. Whether the State is entitled to attorney fees and costs on appeal.

### IV. STANDARD OF REVIEW

This Court reviews a district court's decision to grant summary judgment under the same standard employed by the district court. *In re Sanders Beach*, 143 Idaho 443, 446, 147 P.3d 75, 78 (2006) (internal citation omitted). Summary judgment is proper "if the pleadings, depositions on file, together with the affidavits, if any, show that there is no genuine issue as to any material

---

[2] The district court did not impose the $10,000 fine requested by the State.

fact and that the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c)[3]. "A material issue of fact, for summary judgment purposes, is one that is relevant to an element of the claim or defense and whose existence might affect the outcome of the case." *Rife v. Long*, 127 Idaho 841, 849–50, 908 P.2d 143, 151–52 (1995) (citing *United States v. Grayson*, 879 F.2d 620 (9th Cir. 1989)). "[T]his Court construes disputed facts, and all reasonable inferences that can be drawn from the record, in favor of the non-moving party." *Grabicki v. City of Lewiston*, 154 Idaho 686, 690, 302 P.3d 26, 30 (2013) (internal citation omitted).

## V. ANALYSIS

**A.    The district court did not err in granting partial summary judgment because the dispute regarding the true location of the OHWM is not a material fact in determining whether Hudson violated the LPA.**

Hudson argues that the district court erred in concluding that it did not matter whether 2437.64 feet was the OHWM or the AHWM of Priest Lake. Hudson argues that his evidence proves that the OHWM was at 2435.64 feet at the time Idaho became a state, and that most, if not all, of the fill was placed within the nineteen feet between elevations 2435.64 and 2437.64.[4] Hudson argues that summary judgment is only appropriate when there is no genuine issue of a material fact, and that because there was a dispute regarding the actual location of the OHWM, and whether or not his encroachment was located upland of the OHWM, the district court erred when it granted the State's motion for partial summary judgment. Further, Hudson reasons that because the State denied the existence of the AHWM on Priest Lake, it needed to prove that the OHWM of Priest Lake at the time Idaho became a state was located at 2437.64 feet. Hudson claims that the district court impermissibly resolved an issue of fact based on the State's denial that Priest Lake has an AHWM. Additionally, Hudson alleges that the Second Schanilec Affidavit should not be considered on appeal because it was not timely filed with the district court.

In response, the State reasons that whether 2437.64 feet is the OHWM or the AHWM is immaterial because the State has the authority under the LPA to regulate encroachments below

---

[3] The district court granted summary judgment in June 2016. Effective July 1, 2016, Idaho Rule of Civil Procedure 56 was amended. The relevant portion of the rule now provides: "The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a).

[4] The difference between the 2435.64 and 2437.64 water marks results in approximately nineteen feet of sloping land extending waterward from the 2437.64 water mark.

either the OHWM or the AHWM. Accordingly, the State asserts the district court did not err in granting the motion for partial summary judgment because, regardless of whether 2437.64 feet is an ordinary or an artificial high water mark, the State has authority to regulate Hudson's encroachment, and he was required to obtain an encroachment permit prior to placing fill in the bed of Priest Lake. The State continues, arguing that while Hudson's fill might benefit his own property, it does not provide major environmental, economic, or social benefits to the general public, and that under the LPA, any person who is found to be wrongfully encroaching on, in or above the beds of a navigable lake shall be directed to restore the lake to the condition it was in prior to the unauthorized encroachment. Further, the State alleges that Hudson's concern regarding the Second Schanilec Affidavit is not properly before this Court because the district court specifically noted that it did not consider it when rendering its decision.

Idaho law provides that "a riparian owner (on a navigable river or stream) or a littoral owner (on a navigable lake) takes title down to the natural high water mark." *In re Sanders Beach*, 143 Idaho 443, 453, 147 P.3d 75, 85 (2006) (citing *West v. Smith*, 95 Idaho 550, 554, 511 P.2d 1326, 1330 (1973)). The State of Idaho then owns, "in trust for the public title to the bed of the navigable water below the OHWM as it existed at the time the State was admitted into the Union." *Id.* (citing *Erickson v. State*, 132 Idaho 208, 210, 970 P.2d 1, 3 (1998)). The Idaho legislature enacted the LPA, which is codified as Idaho Code 58, chapter 13, to regulate encroachments and activities that occur in, on, or above navigable lakes in the State of Idaho. *See generally* I.C. §§ 58-1301 *et. seq.*

The LPA provides that:

> [T]he public health, interest, safety and welfare requires that all encroachments upon, in or above the beds or waters of navigable lakes of the state be regulated in order that the protection of property, navigation, fish and wildlife habitat, aquatic life, recreation, aesthetic beauty and water quality be given due consideration and weighed against the navigational or economic necessity or justification for, or benefit to be derived from the proposed encroachment. No encroachment on, in or above the beds or waters of any navigable lake in the state shall hereafter be made unless approval therefor has been given as provided in this act.

I.C. § 58-1301.

The LPA defines a navigable lake as: "any permanent body of relatively still or slack water, including man-made reservoirs, not privately owned and not a mere marsh or stream eddy, and capable of accommodating boats or canoes." I.C. § 58-1302(a).

7

Beds of navigable lakes are defined as: "the lands lying under or below the 'natural or ordinary high water mark' of a navigable lake and, for purposes of this act only, the lands lying between the natural or ordinary high water mark and the artificial high water mark, if there be one." *Id*. at (b). Encroachments not in aid of navigation include "encroachments on, in or above the beds or waters of a navigable lake, including landfills or other structures not constructed primarily for use in aid of the navigability of the lake." I.C. § 58-1302(i).

An OHWM is defined as: "the high water elevation in a lake over a period of years, uninfluenced by man-made dams or works, at which elevation the water impresses a line on the soil by covering it for sufficient periods to deprive the soil of its vegetation and destroy its value for agricultural purposes." *Id*. at (c).

An AHWM is defined as: "the high water elevation above the natural or ordinary high water mark resulting from construction of man-made dams or control works and impressing a new and higher vegetation line." *Id*. at (d).

The crux of this appeal is whether the true location of the OHWM on Priest Lake is a material fact. If it is a material fact, the district court's award of partial summary judgment was improper. We hold that the location of the OHWM is not a material fact in determining whether Hudson violated the LPA. The State alleges that Hudson violated the LPA by placing fill in an area waterward of the OHWM of Priest Lake, while Hudson maintains that the OHWM is two feet lower and the fill was placed on his own property. Under either argument, it is undisputed that Hudson placed fill that extends into the navigable bed of Priest Lake. It is undisputed that Hudson's fill constitutes an encroachment.

The LPA requires that, in order to protect public health, interest, safety and welfare:

all encroachments upon, in or above the beds or waters of navigable lakes of the state be regulated in order that the protection of property, navigation, fish and wildlife habitat, aquatic life, recreation, aesthetic beauty and water quality be given due consideration and weighed against the navigational or economic necessity or justification for, or benefit to be derived from the proposed encroachment.

I.C. § 58-1301. As a result, the State must provide approval before any encroachment can be placed on, in, or above the beds or waters of any navigable lakes. *Id*. The LPA defines the beds of navigable lakes as "the lands lying between the natural or ordinary high water mark and the artificial high water mark, if there be one." I.C. § 58-1302(b). In sum, whether 2437.64 feet was the OHWM or the AHWM is not an issue of material fact because the State has the authority to

8

regulate encroachments under both marks. Accordingly, the district court did not err in granting partial summary judgment in favor of the State. Separately, because the district court did not consider the Second Schanilec Affidavit in reaching its decision, Hudson's request that it not be considered for purposes of resolving this appeal is moot.

**B.      The State is entitled to costs and attorney fees on appeal.**

The State requests costs and attorney fees on appeal pursuant to Idaho Code section 12-117. The State argues that whether 2437.64 feet is the OHWM or the AHWM is irrelevant under the LPA, and that Hudson's appeal was brought without a reasonable basis in fact or law. Hudson argues that it would be improper to award the State attorney fees regardless of which party prevailed, because his position is supported by facts and law.

Idaho Appellate Rule 40 provides that "[w]ith the exception of post-conviction appeals and appeals from proceedings involving the termination of parental rights or an adoption, costs shall be allowed as a matter of course to the prevailing party unless otherwise provided by law or order of the Court." I.A.R. 40. Idaho Code section 12-117 provides that:

> Unless otherwise provided by statute, in any proceeding involving as adverse parties a state agency or a political subdivision and a person, the state agency, political subdivision or the court hearing the proceeding, including on appeal, shall award the prevailing party reasonable attorney's fees, witness fees and other reasonable expenses, if it finds that the nonprevailing party acted without a reasonable basis in fact or law.

I.C. § 12-117(1). This Court has awarded attorney fees pursuant to Idaho Code section 12-117 when a nonprevailing party "continued to rely on the same arguments used in front of the district court, without providing any additional persuasive law or bringing into doubt the existing law on which the district court based its decision." *City of Blackfoot v. Spackman*, 162 Idaho 302, __, 396 P.3d 1184, 1192 (2017) (citing *Rangen, Inc. v. Idaho Dep't of Water Res.*, 159 Idaho 798, 812, 367 P.3d 193, 207 (2015)).

The State is the prevailing party on appeal and is awarded costs and attorney fees pursuant to Idaho Code section 12-117(1). On appeal, Hudson proffered substantially the same argument that previously failed before the district court. Hudson did not present any new persuasive law, nor did he significantly challenge the existing law upon which the district court relied in granting partial summary judgment in favor of the State. *See Blackfoot*, 162 Idaho 302, 396 P.3d at 1192. As a result, we award the State attorney fees on appeal.

**VI. CONCLUSION**

We hereby affirm the district court's grant of partial summary judgment in favor of the State and award costs and attorney fees on appeal to the State. This case is remanded to the district court for further action on any remaining issues.

Chief Justice BURDICK and Justices HORTON, BRODY and Justice *pro tem* TROUT, concur.