**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 46334**

| | | |
|---|---|---|
| ROY E. NEWTON and NANCY NEWTON, husband and wife, | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | |
| MJK/BJK, LLC, an Idaho limited liability company; MBK LAKE, LLC, an Idaho limited liability company; KAKM, LLC, an Idaho limited liability company; and IDAHO DEPARTMENT OF LANDS, an agency of the State of Idaho, | ) ) ) ) ) ) ) | Boise, April 2020 Term<br><br>Opinion Filed: July 30, 2020<br><br>Melanie Gagnepain, Clerk |
| Defendants-Respondents, | ) ) | |
| and | ) ) | |
| DOES 1-10, | ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Cynthia K.C. Meyer, District Judge.

The district court's summary judgment decisions are <u>affirmed</u>.

Dunn & Black, Spokane, Washington, for appellants. Robert A. Dunn argued.

Witherspoon Kelley, Coeur d'Alene, for respondents MJK/BJK, LLC, MBK Lake, LLC, and KAKM, LLC. Laura L.D. Aschenbrener argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent Idaho Department of Lands. Angela Schaer Kaufmann argued.

_____

BRODY, Justice.

This case addresses whether a party may collaterally attack a permitting decision made by the Idaho Department of Lands (IDL) outside of filing a petition for judicial review and

Idaho's public and private nuisance jurisprudence. In 2015, the Kenworthys began construction on a two-story boat garage on Lake Coeur d'Alene. The Newtons' property overlooks the location of the Kenworthys' boat garage. The new structure was much larger than the original boat garage and now has a second floor. After construction began, the Newtons took issue with the size of the new structure, and sued IDL and the Kenworthys' related family entities (the LLC Respondents), asserting claims of public and private nuisance and requesting injunctive relief to mandate the removal of the offending structure. The parties filed cross-motions for summary judgment. The district court held that the Newtons failed to establish that the boat garage was illegal and that their nuisance claims failed as a matter of law. The district court subsequently entered judgments in favor of IDL and the LLC Respondents. After the district court denied the Newtons' motion for reconsideration, the Newtons timely appealed. We affirm the district court.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual background.

The Newtons and the Kenworthys own littoral (lakeside) property on the western shore of Lake Coeur d'Alene in Everwell Bay. Title to the Kenworthy property is now held by family owned entities which are referred to as the "LLC Respondents." The Kenworthy family has maintained a boat garage on the bay since about 1940. The Newtons' property overlooks the location of the Kenworthys' dock and boat garage. The size of Kenworthys' boat garage and its impact on the Newtons' view of the lake is the heart of this dispute.

The Kenworthys first applied for and received an encroachment permit for their boat garage in 1977. This first permit authorized a 45′ x 23′ boat garage. Twenty years later, a subsequent encroachment permit for the same boat garage inexplicably authorized a larger 35′ x 60′ structure. The record is silent as to how or why the size of the boat garage in the encroachment permit expanded over time.

In December 2011, acting on behalf of the LLC Respondents, Brian Kenworthy filed a Joint Application for Permit (Application). The Application sought to replace the existing boat garage using the same "footprint." Using the 35′ x 60′ dimensions from the boat garage in the most recent encroachment permit, the Application proposed a 38′ x 66′ boat garage. The Application's drawing included a note indicating that the LLC Respondents intended to move the previous boat garage's wall to the edge of the existing dock layout to accommodate the new boat garage. In other words, the original boat garage with its surrounding dock would be replaced by a

2

larger boat garage with no surrounding dock structure.

In January 2012, IDL published notice of the Application in the *Coeur d'Alene Press*. The published notice provided:

> Pursuant to Section 58-104(g) and 58-1301, et seq., Idaho Code (The Lake Protection Act) and rules of the State Board of Land Commissioners, notice is hereby given that Brian Kenworthy – MJK/BJK LLC, of 3008 W. Lutherhaven Rd. – Coeur d'Alene, ID 83814 made application to replace and repair an existing boat garage on Lake Coeur d'Alene. Located on Lake Coeur d'Alene adjacent to: Sections 11, Township 49 North, Range 4 West; B.M., in Kootenai County.

IDL also provided written notice of the Application to the LLC Respondents' adjacent neighbors. The Newtons are not "adjacent" neighbors. IDL received no objections to the Application and issued Encroachment Permit No. ERL-95-S-873-C (Permit 873C) to the LLC Respondents on February 22, 2012, without conducting a hearing. Permit 873C authorized the LLC Respondents to construct a new 38′ x 66′ boat garage.

After construction began in 2015, IDL received phone calls and emails from Everwell Bay residents—including Roy Newton—regarding the new boat garage's height. The construction revealed that the new boat garage had a second story and was much larger than the prior boat garage. In July 2015, IDL sent Brian Kenworthy a stop work order after seeing a second floor on the boat garage. In notifying Roy Newton of the stop work order, IDL employee Jim Brady wrote that IDL does "not and cannot allow second floors [on] boat garages, end of story." Later that same day, Brady reviewed Permit 873C and determined that the height of the boat garage as constructed was consistent with the permit. Brady subsequently lifted the stop work order.

In the fall of 2015, IDL public trust program manager Andrew Smyth conducted an internal review of Permit 873C. In his findings, Smyth concluded that "IDL erred in issuing [Permit 873C]," because the new boat garage more than doubled the size of the authorized boat garage. Further, Smyth concluded that "IDL did not have sufficient information regarding the size of the boat garage when it issued [Permit 873C]" because the information in the Application did not specify the height of the proposed boat garage.

In the summer of 2016, IDL conducted another investigation into Permit 873C and the neighbors' concerns, but reversed course on the noncompliance issues identified by Smyth. In explaining the agency's conclusions, Brady stated in an affidavit that when IDL considers the footprint of encroachments, it looks at the effect of the encroachment in terms of surface area

occupied on top of the lakebed. Thus, according to IDL, while the total area of the boat garage (the building itself) increased, it still complied with the permit because it did not expand the footprint in place prior to the new construction. The Newtons commenced litigation after IDL made it clear that it would not require removal of the structure.

## B. Procedural background.

After more than a year of litigation in the district court, the Newtons filed their Amended Complaint with four causes of action: (1) public nuisance; (2) private nuisance; (3) injunctive relief—restoration and mitigation of damages; and (4) injunctive relief—IDL's continued approval of Permit 873C.

The Newtons filed a motion for partial summary judgment on their claims for injunctive relief. IDL and the LLC Respondents each filed cross-motions for summary judgment on all counts in the Newtons' Amended Complaint. The district court denied the Newtons' motion for partial summary judgment and granted IDL and the LLC Respondents' motions for summary judgment on all claims. The district court concluded that the Newtons failed to establish that the boat garage was illegal under the Idaho Code or IDL Rules. Further, the district court granted IDL and the LLC Respondents summary judgment on the Newtons' public and private nuisance claims. The district court entered judgment in favor of the LLC Respondents and IDL. Subsequently, the district court denied the Newtons' motion for reconsideration. The Newtons timely appealed.

## II. STANDARD OF REVIEW

When this Court reviews a lower court's ruling on a summary judgment motion, this Court applies the same standard of review the lower court utilized in ruling on the motion. *Idaho First Bank v. Bridges*, 164 Idaho 178, 182, 426 P.3d 1278, 1282 (2018); *Hansen v. City of Pocatello*, 145 Idaho 700, 702, 184 P.3d 206, 208 (2008). Thus, summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Bridges*, 164 Idaho at 182, 426 P.3d at 1282. Any disputed facts and reasonable inferences are construed in favor of the non-moving party, and the Court freely reviews the questions of law. *Id.* "This Court exercises free review over statutory interpretation because it presents a question of law." *State v. Amstad*, 164 Idaho 403, 405, 431 P.3d 238, 240 (2018).

## III. ANALYSIS

## A. The district court did not err in granting IDL and the LLC Respondents summary

4

**judgment on the Newtons' claims for injunctive relief.**

The Newtons' claims for injunctive relief challenge the LLC Respondents' boat garage and IDL's decision to issue Permit 873C. Specifically, the Newtons assert that the boat garage and the process that IDL used to approve Permit 873C were "illegal" under IDL Rules, the LPA, the PTD, and the Due Process Clause of the Constitution. The Newtons assert that these illegalities entitle them to injunctive relief. Injunctive relief, however, is a remedy—not a cause of action. This Court has affirmed the dismissal of a litigant's complaint seeking injunctive relief when it was not supported by any valid cause of action. *See Bonner Cnty. v. Bonner Cnty. Sheriff Search & Rescue, Inc.*, 142 Idaho 788, 789–90, 134 P.3d 639, 640–41 (2006). Thus, for the Newtons' claims for injunctive relief to succeed, they must be based on a valid cause of action to afford them the remedy they seek.

1. The Newtons' claims for injunctive relief are an impermissible collateral attack on IDL's permitting decision.

We begin by addressing the Newtons' unusual route to the courtroom. Typically, the Idaho Administrative Procedure Act (IDAPA) governs the review of agency decisions. *Urrutia v. Blaine Cnty.*, 134 Idaho 353, 357, 2 P.3d 738, 742 (2000). Under the IDAPA, parties seeking to challenge agency action, such as the decision to issue a permit, must do so by filing a petition for judicial review. I.C. § 67-5270; I.R.C.P. 84(a)(1); *Laughy v. Idaho Dep't of Transp.*, 149 Idaho 867, 870, 243 P.3d 1055, 1058 (2010). In this case, the Newtons are challenging an agency decision *outside* of a petition for judicial review. The district court dismissed the Newtons' claim for judicial review of final agency action in their original complaint for improperly joining it with a civil action. Importantly, that decision has not been challenged on appeal. IDL argues that, with the exception of the claim for alleged due process violations, the Newtons' various allegations that the boat garage is "illegal" are improper collateral attacks on a final agency action outside of judicial review. We agree.

2. Legal background.

Before addressing the merits of the Newtons' claims for injunctive relief, some background on the Public Trust Doctrine (PTD) and Idaho's Lake Protection Act (LPA) is warranted.

*a. The Public Trust Doctrine*

Under the PTD, "the state, acting on behalf of the people, has the right to regulate, control and utilize navigable waters for the protection of certain public uses, particularly

5

navigation, commerce and fisheries." *Kootenai Env't All., Inc. v. Panhandle Yacht Club, Inc.*, 105 Idaho 622, 625, 671 P.2d 1085, 1088 (1983) (quoting Roderick Walston, *The Public Trust Doctrine in the Water Rights Context: The Wrong Environmental Remedy*, 22 U. Santa Clara L. Rev. 62, 66 (1982)). Pursuant to the Equal Footing Doctrine, when Idaho became a state in 1890, generally speaking, it took title to the beds and banks of navigable waters below the ordinary high-water mark. *Idaho Forest Indus., Inc. v. Hayden Lake Watershed Improvement Dist.*, 112 Idaho 512, 516, 733 P.2d 733, 737 (1987). Idaho obtained that title subject to a public trust, which "preserves the public's right of use in such land, and, as a result, restricts the state's ability to alienate any of its public trust land." *Mesenbrink v. Hosterman*, 147 Idaho 408, 410, 210 P.3d 516, 518 (2009) (quoting *Idaho Forest Indus.*, 112 Idaho at 516, 733 P.2d at 737) (internal quotation marks omitted). The PTD traditionally protected the public's right to navigation, but has since expanded to protect fish and wildlife habitation, recreation, aesthetic beauty, and water quality. *Idaho Forest Indus.*, 112 Idaho at 516, 733 P.2d at 737.

This Court addressed the scope of the PTD in *Kootenai Environmental Alliance, Inc. v. Panhandle Yacht Club, Inc.*, 105 Idaho 622, 671 P.2d 1085 (1983). While *Panhandle Yacht Club* is still good law, the Idaho Legislature has since acted on the PTD. *See* I.C. § 58-1201(6). In 1996, the legislature enacted the Public Trust Doctrine Act (PTD Act) to "clarify the application of the [PTD] in the state of Idaho and to expressly declare the limits of this common law doctrine in accordance with the authority recognized in each state to define the extent of the common law." *Id.*

The PTD Act limits the ability of the PTD to be used to enforce private property rights. *See* I.C. § 58-1203. The PTD Act provides that:

> (1) The [PTD] as it is applied in the state of Idaho *is solely a limitation on the power of the state to alienate or encumber the title to the beds of navigable waters as defined in this chapter.* The state board of land commissioners may approve, modify or reject all activities involving the alienation or encumbrance of the beds of navigable waters in accordance with the [PTD].
>
> (2) The [PTD] shall not be applied to any purpose other than as provided in this chapter. Specifically, but without limitation, *the [PTD] shall not apply to*:
>
> . . .
>
> > (c) The *protection or exercise of private property rights* within the state of Idaho.

I.C. § 58-1203 (emphasis added). Thus, the PTD Act does not provide a private cause of action

6

for private property owners.

### b. The Lake Protection Act and IDL Rules

In 1974, the Idaho Legislature enacted the LPA. Lake Protection Act, ch. 243, § 1 (Idaho 1974). The LPA governs both navigational and nonnavigational encroachments. Navigational encroachments pertain to docks, piers, floats, pilings, boat ramps, and other aids to navigability on the lake. I.C. § 58-1302(h). Nonnavigational encroachments pertain to all other encroachments on, in, or above the lake, including structures that do not aid navigation, such as boat garages. I.C. § 58-1302(i).

The LPA vests the State Board of Land Commissioners (the Board) with the power to administer the provisions of the act, including the regulation and control of issuing permits for encroachment in or above the lakes of Idaho. I.C. § 58-1303. Idaho Code section 58-119(1) vests IDL with the power to exercise the Board's rights, powers, and duties with limited exceptions. Thus, IDL is vested with the power to regulate the encroachment permits under the LPA. To implement the LPA, IDL promulgated a set of administrate rules under the Idaho Administrative Code (IDL Rules). *See* IDAPA 20.03.04.000 *et seq.*

### c. Littoral Rights

A littoral (lakeside) property owner typically possesses certain littoral rights, including "the right of access to the water, and, subject to state regulation, the right to build wharves and piers in aid of navigation." *West v. Smith*, 95 Idaho 550, 554, 511 P.2d 1326, 1330 (1973). The LPA defines littoral rights as a littoral owner's right to maintain their adjacency and access to the lake. *See* I.C. § 58-1302(f). The LPA provides that littoral rights are:

> [O]nly the rights of owners or lessees of land *adjacent to navigable waters of the lake to maintain their adjacency to the lake* and to make use of their rights as . . . littoral owners . . . or using aids to navigation but does not include any right to make any consumptive use of the waters of the lake.

I.C. § 58-1302(f) (emphasis added). Notably, nothing in the LPA's definition of littoral rights confers the right to a particular view.

### 3. <u>The LPA and PTD do not authorize the Newtons to bring a private enforcement action.</u>

The Newtons argue that sections 58-1308 and 58-1309 under the LPA and Idaho Code section 58-1203 under the PTD Act provide them, as aggrieved private parties, with the ability to assert independent causes of action to force IDL and the LLC Respondents to remove the boat garage because it is "illegal" under IDL Rules. We disagree.

The provisions of the LPA cited by the Newtons authorize only the *Board and IDL* to seek injunctive relief when the *Board or IDL* determine that an encroachment is unlawful. *See* I.C. §§ 58-1308(1)–(3), 1309. Crucially, these statutes do not authorize aggrieved private parties to pursue injunctive relief independent from judicial review of an agency action.

At the outset, Idaho Code section 58-1308 vests its enforcement power in the Board and IDL to seek injunctive relief. I.C. § 58-1308(1). Section 58-1308(1) provides that "[the Board] shall have authority . . . to seek injunctive relief from the appropriate district court to restrain any person from encroaching on, in or above the beds or waters of a navigable lake until approval therefor has been obtained as provided in this chapter." *Id.* IDL shares this power pursuant to Idaho Code section 58-119(1), which states that IDL shall have the power "[t]o exercise . . . powers and duties vested by law in the [Board.]" I.C. § 58-119(1). Notably, section 58-1308 does not provide aggrieved private parties with any enforcement power or rights.

The Newtons argue that Idaho Code section 58-1308(4) allows them to pursue injunctive relief through the statute because any action taken under the statute does not relieve an offending party—such as the LLC Respondents—from civil action or damages that exist outside of the LPA. Section 58-1308(4) provides that:

> No action taken pursuant to the provisions of this chapter or of any other environmental protection law shall relieve any person from any civil action and damages that may exist for injury or damage resulting from any violation of this chapter or any valid and authorized regulation, rule, permit or order of the board.

I.C. § 58-1308(4). Contrary to the Newtons' argument, nothing in this section provides an aggrieved private party with the right to use this provision of the LPA as a sword to seek civil and injunctive relief. Rather, section 58-1308(4) provides that any action taken pursuant to this section does not relieve the offending party—a party violating the LPA—from civil actions that may exist *outside* of the LPA. Here, the Newtons base their claims for injunctive relief on the LPA itself, rather than some other civil action outside of the LPA. Their reliance on Idaho Code section 58-1308(4) is misplaced.

The Newtons also argue that Idaho Code section 58-1309 provides them with a cause of action for injunctive relief. Idaho Code section 58-1309 works hand-in-hand with IDL and the Board's enforcement powers set forth in section 58-1308. Not only can the Board and IDL determine that an encroachment is unlawful and assess civil penalties, they are also authorized to seek a civil enforcement action with the district court where the encroachment is located. *See* I.C.

8

§§ 58-1308–1309. Section 58-1309 authorizes courts in civil enforcement actions to order removal of unlawful encroachments and restoration of the lake to a condition that existed prior to the unauthorized encroachment:

> Any person legally found to be wrongfully encroaching on, in or above the beds or waters of a navigable lake shall, in lieu of or in addition to penalties provided herein, be directed by the court to restore the lake to as near its condition immediately prior to the unauthorized encroachment as possible or to effect such other measures as recommended by the board and ordered by the court toward mitigation of any damage caused by or resulting from such unlawful encroachment.

I.C. § 58-1309. While a district court certainly has the authority to order the removal of an encroachment in an enforcement action brought by IDL or the Board, there is nothing in this provision which can be fairly read or interpreted to authorize a private party to bring their own private enforcement action seeking either injunctive relief or monetary damages.

In a similar vein, the PTD does not provide an aggrieved private party with the right to seek injunctive relief. Under the PTD Act, the PTD is "solely a limitation on the power of the state" to encumber the beds of navigable waters and does not apply to the protection or exercise of private property rights in Idaho. I.C. § 58-1203(1), (2)(c). While the PTD does not limit or alter other provisions of the Idaho Code—including the LPA—the PTD does not grant an individual the right to pursue civil or injunctive relief. Accordingly, the LPA and PTD do not provide the Newtons with a cause of action to seek injunctive relief.

4. <u>Due process does not entitle the Newtons to injunctive relief because they do not have a protected property interest in an unobstructed view.</u>

Because the Newtons failed to file a timely petition for judicial review, and do not have the right to seek injunctive relief through the LPA or PTD outside of judicial review, the Newtons are left with their procedural due process challenge. This Court will not affirm the validity of an encroachment permit where an opposing party was deprived of their due process rights. *See Lovitt v. Robideaux*, 139 Idaho 322, 327, 78 P.3d 389, 394 (2003) (rejecting a party's attempt to affirm an encroachment permit's validity that denied the opposing party their due process right to object). The Newtons assert that the Application's notice violated their due process rights because it was misleading and improper under Idaho Code section 58-1306(b)— the LPA's notice requirement for encroachment permits.

The district court concluded that the Application's notice was not "illegal" because it complied with the requirement of Idaho Code section 58-1306(b). On appeal, the Newtons

9

contend that the district court erred in concluding that the notice was proper. IDL argues that this Court need not reach the merits of the Newtons' arguments because the Newtons failed to demonstrate that the view from their property over the lake constitutes a *protected property interest* for which procedural due process is applicable. We agree.

Procedural due process requires that there be some process to ensure that an individual is not arbitrarily deprived of his rights in violation of the state or federal constitutions. *Union Bank, N.A. v. JV L.L.C.*, 163 Idaho 306, 317, 413 P.3d 407, 418 (2017). Determining whether an individual's Fourteenth Amendment due process rights have been violated requires this Court to engage in a two-step analysis. *Guzman v. Piercy*, 155 Idaho 928, 939, 318 P.3d 918, 929 (2014). The Court must *first* determine whether the individual is threatened with the deprivation of a liberty or property interest under the Fourteenth Amendment. *Id.* The *second* step requires the Court to determine what process is due. *Id.* "A deprivation of property encompasses claims where there is a legitimate claim or entitlement to the asserted benefit under either state or federal law." *Union Bank*, 163 Idaho at 317, 413 P.3d at 418 (quoting *Bradbury v. Idaho Judicial Council*, 136 Idaho 63, 72–73, 28 P.3d 1006, 1015–16 (2001)). "Only after a court finds a liberty or property interest will it reach the next step of the analysis in which it determines what process is due." *Bradbury*, 136 Idaho at 73, 28 P.3d at 1016.

Property interests are not created by the U.S. Constitution. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Rather, property interests are determined by examining the particular statute, rule, or ordinance in question. *Bradbury*, 136 Idaho at 73, 28 P.3d at 1016. The existence of a liberty or property interest depends on the "construction of the relevant statutes," and the "nature of the interest at stake." *Id.* (quoting *Maresh v. Idaho Dep't of Health & Welfare*, 132 Idaho 221, 226, 970 P.2d 14, 19 (1998)) (internal quotation marks omitted).

The Newtons' central complaint is that the boat garage obstructs their view. Further, the Newtons argue that Idaho law provides them with property rights as lakefront property owners, and, because Lake Coeur d'Alene is "devoted to public use," they have rights as "members of the public and as residents of Idaho." We address these arguments in turn.

The Newtons' view is not a protected property interest for the purposes of a procedural due process claim. The Newtons have failed to produce any Idaho authority that creates a property interest in their view. Further, this Court recently held that private landowners "cannot claim substantial impairment of their rights by what they consider to be unattractive buildings on

10

a neighbor's property." *Hungate v. Bonner Cnty.*, 166 Idaho 388, 396, 458 P.3d 966, 974 (2020). Thus, the Newtons do not have a protected property interest in a certain view.

Unlike scenic view protection, Idaho law does provide protection for lakeside property rights. The LPA protects adjacent property owners' littoral rights. *See* I.C. §§ 58-1305–1306. However, the LPA defines littoral rights as "only the rights of owners or lessees of the land adjacent to navigable waters of the lake to maintain the adjacency to the lake and . . . to make use of their rights . . . in building or using aids to navigation[.]" I.C. § 58-1302(f). The littoral landowner normally possesses "the right of access to the water, and subject to state regulation, the right to build wharves and piers in aid of navigation." *Lake CDA Invs., LLC v. Idaho Dep't of Lands*, 149 Idaho 274, 284, 233 P.3d 721, 731 (2010) (quoting *West*, 95 Idaho at 554, 511 P.2d at 1330). Thus, littoral rights solely concern the *use* of lakeside property, not the preservation of property's scenic view.

Here, the Newtons failed to provide any evidence that the LLC Respondents' boat garage impacts their littoral rights. Nothing about the boat garage threatens the Newtons' access to the lake, their ability to maintain their adjacency to it, or their ability to "wharf out" (construct and use a dock) the lake. The record demonstrates that the Newtons have two docks themselves, but the Newtons have failed to provide evidence that the boat garage impacts the use of their docks. Further, the Newtons' main complaint with the boat garage is its size, and its impact on their view. Littoral rights under the LPA, however, do not encompass rights to a certain view or aesthetic. *See* I.C. § 58-1302(f).

Alternatively, the Newtons argue that, as members of the public, they are entitled to protect certain aesthetic rights. Under the LPA, the state, in order to protect the "*public* health, interest, safety and welfare[,]" must give due consideration to "aesthetic beauty." I.C. § 58-1301 (emphasis added). Further, Idaho Code section 67-4305 declares that "lands belonging to the state of Idaho between the ordinary high and low water mark at said lakes [including Lake Coeur d'Alene] as well as all other lands of the state adjacent to said lake" are devoted to public use. The Newtons argue that, as members of the public, these two statutory provisions protect their private property rights. We disagree.

The LPA requires the state to consider aesthetic beauty to protect *public* health, safety, and welfare when considering encroachments. I.C. § 58-1301. Thus, the state is required to consider the encroachment's impact to aesthetic beauty to protect the public's interest. The only

11

rights protected for private land owners in the LPA are littoral rights. Further, the Newtons' public use argument defies logic. The Newtons' claims are based on an obstructed view from their private property, yet they attempt to base their protected property interest on their status as a member of the general public. Even considering the language of the LPA and Idaho Code section 67-4305, the Newtons failed to produce any evidence that the boat garage prevents any members of the public, or any other neighbors on Everwell Bay, from using Lake Coeur d'Alene. Thus, the Newtons failed to demonstrate that they have a protected property interest in their littoral rights. Accordingly, the district court did not err in grating IDL and the LLC Respondents summary judgment on the Newtons' claims for injunctive relief.

To conclude our holding on the Newtons' claims for injunctive relief, it is entirely possible that the Newtons have real grievances with the IDL's permitting decision. This Opinion should not be read to condone IDL's actions in this matter. While this Court is sympathetic to the Newtons' grievances, they have failed to identify any applicable legal framework which affords them injunctive relief.

We decline to address the merits of the Newtons' arguments regarding Roy Newton and Steven Syrcle's declarations. The Newtons' arguments regarding the stricken declarations pertain to their claims for injunctive relief. Because the district court did not err in granting IDL and the LLC Respondents summary judgment on the Newtons' claims for injunctive relief, we do not reach the merits of this issue on appeal.

Additionally, the Newtons assert that they are entitled to money damages based on a continuing tort theory. The Newtons argue that IDL's failure to correct an "illegal" encroachment authorized by Permit 873C constitutes a continuing tort, entitling them to monetary relief. As we held above, the LPA does not afford private parties a private right of enforcement to seek damages. Even if the LPA afforded private parties such an enforcement right, the Idaho Tort Claims Act (ITCA) would immunize IDL. The ITCA immunizes governmental entities and employees for actions arising out of the issuance or failure or refusal to issue or deny a permit. I.C. § 6-904B(3). Thus, the Newtons' continuing tort claim based on IDL's permitting decision fails.

**B. The district court did not err in granting IDL and the LLC Respondents summary judgment on the Newtons' private nuisance claim.**

The Newtons contend that the district court erred in granting IDL and the LLC Respondents summary judgment on their private nuisance claim. Specifically, the Newtons argue

that whether the boat garage constitutes a private nuisance under Idaho law presents a genuine issue of material fact, and, as such, summary judgment was improper.

Idaho Code section 52-101 provides that a nuisance is:

Anything which is injurious to health or morals, or is indecent, or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, stream, canal, or basin, or any public park, square, street, or highway, is a nuisance.

A private nuisance is "[e]very nuisance not defined by law as a public nuisance or a moral nuisance." I.C. § 52-107.

The fact that a building is "unsightly or out of harmony in construction with adjacent buildings, and therefore not pleasing to the eye, would not make it offensive to the senses within the meaning" of nuisance law. *White v. Bernhart*, 41 Idaho 665, 670–71, 241 P. 367, 368 (1925). A landowner does not have the right under nuisance law to prohibit an adjoining neighbor from erecting structures that they consider to be displeasing. *McVicars v. Christensen*, 156 Idaho 58, 62, 320 P.3d 948, 952 (2014). The exception to this rule is where a landowner builds a structure out of spite that serves no useful purpose. *Id.* (citing *Sundowner, Inc. v. King*, 95 Idaho 367, 368, 509 P.2d 785, 786 (1973)).

The Newtons' private nuisance arguments assert that the LLC Respondents' boat garage creates a nuisance in three ways: (1) the boat garage "dramatically changed" their view of the lake because it is offensive to look at and significantly interferes with their use and quiet enjoyment of the lake; (2) the metal roof of the boat garage produces a "glare" directed into their home; and (3) the boat garage and IDL's approval of Permit 873C unlawfully violated their due process rights and IDL Rules. We address these arguments in turn.

The Newtons failed to establish that their obstructed views caused by the LLC Respondents' boat garage gives rise to a private nuisance as a matter of law. The Newtons argue that the boat garage blocks lake vistas, "is offensive to look at, and significantly interferes with [their] quiet enjoyment and use of their property." Crucially, the Newtons failed to produce any facts or evidence that the boat garage serves no useful purpose or was built for the sole purpose of obstructing their view. *See McVicars*, 156 Idaho at 62, 320 P.3d at 952. While the Newtons find the boat garage aesthetically displeasing, that alone is not enough to sustain a private nuisance claim under *Sundowner* and *McVicars*.

Additionally, the Newtons assert that the boat garage's roof produces a glare that

13

penetrates into their home. The Newtons merge their glare allegations with their obstructed view allegations. In his declaration, Roy Newton asserted that "[a]t prime *viewing times during the day*, the sun reflects off the boat garage roof with *a blinding glare to anyone viewing the lake from our property* and reflects into our home." This allegation connects the harm from glare to the Newtons' views of the lake. As stated above, the Newtons' obstructed view does not give rise to a private nuisance in this case. *See McVicars*, 156 Idaho at 62, 320 P.3d at 952.

Separate from obstructing their view, the Newtons assert that the glare from the roof shines light *inside* their home. However, the Newtons failed to connect their evidence of glare inside the home to any cognizable definition of nuisance under the statute. The Newtons produced two photographs of the glare in the record. One of the photographs depicts a sitting area inside of the Newtons' home with a glass doorway leading out to their porch and view of the lake. The curtains are open in the photo, and light, or glare, shines inside the room from their porch. Clearly, the photograph shows light coming into the room, but the Newtons failed to produce any evidence of how the light obstructs the free use of their property, so as to interfere with the comfortable enjoyment their life or property *inside* their home. *See* I.C. § 52-101. Aside from being generally annoying, the record contains no facts or allegations how the glare interferes with Newtons' life, use, or enjoyment of their property while inside their home. To clarify our ruling, we are not holding that reflective glare cannot ever be a private nuisance. The definition of nuisance—in particular, "[a]nything which is injurious to health or morals, or is indecent, or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property"—is broad enough to encompass glare as a private nuisance. I.C. § 52-101. Here, however, the Newtons failed to show that the glare gives rise to a private nuisance as a matter of law.

The Newtons further argue that the boat garage is a nuisance because it is "unlawful." Specifically, the Newtons argue that IDL deprived them of due process and that the boat garage violates multiple administrative rules regulating lake encroachments. Here, the Newtons' arguments regarding "unlawful" conduct appear to reference the nuisance statute's definition identifying "[a]nything which . . . *unlawfully obstructs the free passage or use*, in the customary manner, of any navigable lake . . . [as] a nuisance." I.C. § 52-101 (emphasis added). This argument fails. The statute specifically references unlawful *obstructions* to the free passage or use of a navigable lake. *See id.* The Newtons failed to produce any facts or evidence indicating

that the boat garage obstructs their free passage, navigation, or use of the lake. Rather, the Newtons' arguments regarding due process and IDL Rules address specific problems with IDL's process in reviewing approving Permit 873C. Thus, the Newtons' argument that the boat garage is a nuisance because it is "unlawful" fails as a matter of law. Accordingly, the district court did not err in granting IDL and the LLC Respondents summary judgment on the Newtons' private nuisance claim.

C. **The district court did not err in granting IDL and the LLC Respondents summary judgment on the Newtons' public nuisance claim.**

The Newtons also contend that the district court erred in granting IDL and the LLC Respondents summary judgment on their public nuisance claim. A public nuisance is "one which affects at the same time *an entire community or neighborhood*, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." I.C. § 52-102 (emphasis added).

The district court concluded that the Newtons' public nuisance claim failed as a matter of law. The district court relied on this Court's decision in *Ritter v. Standal*, 98 Idaho 446, 566 P.2d 769 (1977). In *Ritter*, this Court affirmed the removal of a fish farm from the Snake River based on public nuisance, holding that the fish farm obstructed free passage on a navigable estuary on the river. *Id.* at 450, 566 P.2d at 773. In granting IDL and the LLC Respondents summary judgment on public nuisance, the district court limited its nuisance analysis to whether the boat garage unlawfully obstructed the entire community's *navigation* on Everwell Bay. The Newtons argue that their nuisance claims are not limited to the parameters of *Ritter*, which only discussed public nuisance in the context of a navigational obstruction. We agree. Idaho Code section 52-101 considers more than navigational obstructions in defining a nuisance. The language of the statute considers "[a]nything which is injurious to health or morals . . . *or* offensive to the senses, *or* an obstruction to the free use of property . . . *or* unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake . . . is a nuisance." I.C. § 52-101 (emphasis added). Nothing in the statute or *Ritter* suggests that public nuisance claims must be limited to the obstruction of free navigation on a body of water. Thus, the Newtons' public nuisance claim is not limited to an analysis of whether the boat garage obstructs navigation for the entire community.

Here, the Newtons' public nuisance claim asserts that the boat garage interferes with "other members of the public's right to enjoy [l]ake views" and interfered with the public's

15

"rights, views, and use of the [l]ake[.]" The Newtons argue that "several members of the public" also complained to IDL and the LLC Respondents about the boat garage. To support these assertions, the Newtons cite to portions of the record that reference other Everwell Bay residents' complaints about the boat garage. Specifically, the Newtons rely on a paragraph from Roy Newton's affidavit, stating that "[s]everal other neighbors" had joined him in requesting a new hearing and revocation of Permit 873C. Further, the Newtons cite to calls that an IDL employee received from three Everwell Bay residents complaining about the second floor on the new boat garage.

Notwithstanding the evidence above, the Newtons failed to establish that the boat garage affects the entire community to support a public nuisance claim. First, while the Newtons produced evidence that at least three other residents on Everwell Bay disliked the boat garage, the opinion of three other residents does not necessarily reflect the *entire* community or neighborhood on Everwell Bay and Lake Coeur d'Alene. Second, the evidence in the record does not support that the boat garage interfered with the community's rights, views, and use of the lake to constitute a nuisance. As discussed above, a view that is considered aesthetically displeasing cannot support a nuisance claim without evidence of spite. *See McVicars*, 156 Idaho at 62, 320 P.3d at 952. Thus, the Newtons must demonstrate that the boat garage affects the entire community's rights and use of the lake in a way protected by the law. None of the evidence in the record suggests that the other residents' rights and use of the lake were affected by the boat garage. Rather, the evidence indicates that other residents complained about the height of the boat garage and their views of the lake. Pursuant to *McVicar*s, such evidence is not sufficient to support a nuisance claim. Thus, the Newtons failed to provide evidence that the boat garage constituted a nuisance that affected the entire community as a matter of law. Accordingly, the district court did not err in granting IDL and the LLC Respondents summary judgment on the Newtons' public nuisance claim.

### D. Attorney fees for this appeal.

Both IDL and the LLC Respondents seek an award of attorney fees and costs on appeal pursuant to Idaho Code section 12-121. Attorney fees under this statute may be awarded to the prevailing party when an appeal is brought frivolously, unreasonably, or without foundation. I.C. § 12-121. Here, the Newtons raised legitimate questions for the Court to address regarding the LPA, due process, and Idaho nuisance law. Thus, we decline to award attorney fees under Idaho

Code section 12-121.

Additionally, IDL seeks an award of attorney fees pursuant to Idaho Code section 12-117. Attorney fees under this section award attorney fees to a prevailing party if they are adverse to a government entity and if the court finds that the non-prevailing party acted without a reasonable basis in fact or law. I.C. § 12-117(1). IDL cites *State v. Hudson*, 162 Idaho 888, 894, 407 P.3d 202, 208 (2017), in support of its claim for attorney fees. In *Hudson*, this Court awarded attorney fees pursuant to Idaho Code section 12-117(1) where the appellant "proffered substantially the same arguments that previously failed before the district court," and where the appellant did not challenge the existing law upon which the district court based its decision. *Id.*

While the Newtons may have substantially proffered the same arguments that failed in the district court on appeal, the Newtons raised matters of first impression regarding this Court's application of the LPA and PTD, and challenged the district court's application of Idaho's nuisance precedent. Given the totality of the record, we cannot say it was improper for them to do so. Thus, we decline to award attorney fees to IDL pursuant to Idaho Code section 12-117(1).

## IV. CONCLUSION

In light of the foregoing, we affirm the district court's summary judgment decisions. Costs are awarded to IDL and the LLC Respondents.


Chief Justice BURDICK, and Justices BEVAN, STEGNER and MOELLER CONCUR.