# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 38759

| | |
|---|---|
| TWO JINN, INC., a California corporation duly qualified to do business in Idaho and doing business as ALADDIN BAIL BONDS and ANYTIME BAIL BONDS, | ) ) ) ) Boise, November 2012 Term |
| Petitioner-Appellant, | ) ) 2013 Opinion No. 3 ) |
| | ) Filed: January 11, 2013 ) |
| v. | ) Stephen W. Kenyon, Clerk ) |
| IDAHO DEPARTMENT OF INSURANCE, | ) ) |
| Respondent. | ) |

_____

Appeal from the district court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Kathryn A. Sticklen, District Judge.

The decision of the district court is <u>reversed</u> and this case is <u>remanded</u> for action consistent with the Opinion. Costs on appeal are awarded to Appellant.

Nevin, Benjamin, McKay & Bartlett, LLP, Boise, attorneys for Appellant. Scott McKay argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, attorney for Respondent. John C. Keenan argued.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

A bail bond company challenges the district court's decision affirming an order of the Director of the Idaho Department of Insurance. That order, which was based on I.C. § 41-1042, prohibits a bail bond company from contemporaneously writing a bail bond and contracting with a client to indemnify the company for the cost of apprehending a bail jumper. It also prohibits a bail bond company from later requiring a client to agree to such indemnification as a condition of the bond's continuing validity.

## II. FACTUAL AND PROCEDURAL BACKGROUND

1

Two Jinn, Inc. ("Two Jinn"), which also does business as Aladdin Bail Bonds and Anytime Bail Bonds, is a licensed bail agent. Two Jinn sells bail bonds for Danielson National Insurance Company, an authorized surety insurer. Paragraph Three of Two Jinn's standard bail contract, titled "Indemnity Agreement for Surety Bail Bond" (hereinafter "the Contract") requires its clients—who may be criminal defendants or their friends, relatives, or other guarantors—to indemnify Two Jinn for the cost of apprehending defendants who jump bail. In 2009, the Idaho Department of Insurance (the "Department") sent a letter to Two Jinn asking it to remove this provision from the Contract. Two Jinn responded by requesting that the Department issue an order declaring that Paragraph Three was legal.

Ultimately, the Director of the Idaho Department of Insurance (the "Director") issued a Final Order declaring that I.C. § 41-1042 prohibits a bail bond company from contemporaneously writing a bail bond and contracting with a client to indemnify the company for the cost of apprehending a defendant who jumps bail. The Director also concluded that a bail bond company may not later require a client to agree to such indemnification as a condition of a bond's continuing validity. Two Jinn sought judicial review from the district court, which affirmed the Final Order in a memorandum decision. While the proceedings before the district court were pending, the Director promulgated I.D.A.P.A. 18.01.04.016.02, which by rule expressed the Final Order.[1] Two Jinn now seeks judicial review of the Final Order by this Court.

### III. ISSUES ON APPEAL

A.    Did the Director reasonably conclude that I.C. § 41-1042 prohibits a bail bond company from contemporaneously writing a bail bond and contracting with a client to indemnify the company for the cost of apprehending a defendant who jumps bail?

B.    Did the Director's interpretation of I.C. § 41-1042 prejudice Two Jinn's substantial rights?

### IV. STANDARD OF REVIEW

---

[1] I.D.A.P.A. 18.01.04.016.02 provides:

> Charges and fees outside the scope of Section 41-1042, Idaho Code, such as charges for returning a defendant to custody after a breach of the bail bond contract, must be negotiated separately after the bail bond has been effectuated. Negotiations for additional charges shall not be entered into as a part of the application, issuance and effectuation of a bail bond and shall not be a condition of or requirement for entering into or continuing a bail bond contract. Any fees or charges that are negotiated separately shall be reasonable in relation to the expenses or services for which the fee or charge is imposed and must be accompanied by a statement that clearly explains that any agreement to pay fees or charges is not a requirement or condition to the validity of the existing bail bond.

2

"When a district court acts in its appellate capacity under the [Idaho Administrative Procedure Act], this Court reviews the agency record independently of the district court's decision." *Kuna Boxing Club, Inc. v. Idaho Lottery Comm'n*, 149 Idaho 94, 97, 233 P.3d 25, 28 (2009). "We review the decision of the district court to determine whether it correctly decided the issues presented to it." *Elias-Cruz v. Idaho Dep't of Transp.*, 153 Idaho 200, 280 P.3d 703, 705 (2012). The district court must affirm an agency action unless it both (1) fails one of the statutory standards enumerated in I.C. § 67-5279, including the requirement that agency actions may not be arbitrary, capricious, and an abuse of discretion; and (2) prejudices an appellant's substantial rights. *Hawkins v. Bonneville Cnty. Bd. of Comm'rs*, 151 Idaho 228, 232, 254 P.3d 1224, 1228 (2011) (lack of prejudice to substantial right bars relief).

An agency's interpretation of a statute that it is entrusted with administering is entitled to deference so long as it is "reasonable and not contrary to the express language of the statute." *Kuna Boxing*, 149 Idaho at 97, 233 P.3d at 28. We interpret the words of a statute according to "their plain, usual, and ordinary meaning," and do not use any other tools of construction if the meaning of the statute is unambiguous from its words alone. *McCann v. McCann*, 152 Idaho 809, 820, 275 P.3d 824, 835 (2012) (quoting *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011)).

The Director of the Idaho Department of Insurance is charged with administering Idaho Code Title 41. *See* I.C. § 41-210. Therefore, Two Jinn is entitled to relief only if (1) the Director's Final Order unreasonably interpreted I.C. § 41-1042, and (2) Two Jinn's substantial rights were prejudiced. While the Director of the Idaho Department of Insurance may promulgate rules to effectuate the provisions of Idaho Code Title 41, "[n]o such rule shall extend, modify, or conflict with any law of this state or the reasonable implications thereof." I.C. § 41-211(1). Therefore, I.D.A.P.A. 18.01.04.016.02 must also be based on a reasonable interpretation of I.C. § 41-1042.[2]

## V. ANALYSIS

---

[2] Two Jinn does not mention I.D.A.P.A. 18.01.04.016.02 in its notice of appeal or request in its briefs that this Court decide the rule's validity. The standard of review for Department rules is relevant here only because it shows that I.D.A.P.A. 18.01.04.016.02 is not entitled to any greater degree of deference from this Court than the Final Order, and therefore the promulgation of the rule cannot immunize the Final Order from judicial review.

3

We reverse the district court's memorandum decision affirming the Director's Final Order because Two Jinn has shown both (1) that the Director's interpretation of I.C. § 41-1042 is unreasonable, and (2) that the Director's interpretation prejudiced Two Jinn's substantial rights.

**A.    The plain text of I.C. § 41-1042 permits a bail bond company to contemporaneously write a bail bond and contract with a client to indemnify the company for the cost of apprehending a defendant who jumps bail.**

The plain dictionary definitions of the words "charge" and "collect" conclusively establish that merely contracting for contingent future indemnity during a bail transaction is permissible under I.C. § 41-1042. The statute at issue here, I.C. § 41-1042, provides in full:

(1)    Notwithstanding any other provision of this chapter, **a bail agent in any bail transaction shall not, directly or indirectly, charge or collect money or other valuable consideration** from any person except for the following:
(a)    To pay premiums at the rates established by the insurer;
(b)    To provide collateral;
(c)    To reimburse the bail agent for actual expenses incurred in connection with the bail transaction, limited to the following:
(i)    Expenditures actually and reasonably incurred to verify underwriting information or to pay for notary public fees, recording fees, or necessary long distance telephone or telegram fees; provided however, that the total of all such expenditures reimbursed shall not exceed fifty dollars ($50.00); and
(ii)    Travel expenses incurred more than twenty-five (25) miles from a bail agent's place of business, which includes any city or locality in which the bail agent advertises or engages in bail business, up to the amount allowed by the internal revenue service for business travel for the year in which the travel occurs.
(2)    Except as permitted under this section, a bail agent shall not make any charge for his service in a bail transaction and the bail agent shall fully document all expenses for which the bail agent seeks reimbursement.

(emphasis added).

As a preliminary matter, we agree with the Department that a bail transaction occurs at the time the bail bond is written. This definition is both reasonable and in harmony with the rest of the statute. Thus, the issue here is whether a bail bond company "charge[s] or collect[s] money or other valuable consideration" merely by *asking a client to sign an indemnity agreement*, or whether it does so only when it *actually demands payment based on such an*

4

*agreement*. "Charge" means "[t]o demand a fee; to bill." Black's Law Dictionary 265 (9th ed. 2009); *see also* Webster's Third New International Dictionary Unabridged 377 (1971) ("to fix or ask (a sum) as a fee or payment."). "Collect" means "to claim and receive in payment . . . to call present as due and receive payment for." *Id.* at 444. At the time a client signs the Contract, Two Jinn does not demand payment for apprehension costs or fix a specific amount to be paid. The client may never need to pay any apprehension costs at all, so long as the defendant timely appears in court. The result clearly would be different if Two Jinn demanded an up-front, nonrefundable deposit to cover apprehension costs—but that is not the case here. Therefore, we hold that merely contracting for future indemnity that is contingent on uncertain future events does not constitute a charge or collection within the meaning of the statute.

While these definitions alone are dispositive, the error of the Department's interpretation is further illustrated by the Department's inconsistent application of the statute to two different types of indemnity agreements. The Department allows bail bond companies to contract during bail transactions for contingent future indemnity covering forfeiture of the face amount of bonds, but does not allow them to similarly contract for contingent future indemnity covering apprehension costs. Because neither type of indemnity is specifically authorized by I.C. § 41-1042, a reasonable interpretation of the statute must allow either (1) both types of indemnity to be negotiated during a bail transaction, or (2) neither type of indemnity to be negotiated during a bail transaction.

The parties raise several other contentions, none of which are persuasive. In particular, we decline to entertain the parties' extensive policy arguments. Two Jinn claims that the Final Order removes any incentive for bail bond companies to apprehend abscondees, thereby leading to an increase in the number of dangerous criminals on the streets. However, Two Jinn has not shown that it has ever apprehended a single abscondee. Nor has it shown that it normally obtains an interest in such little collateral that it has an incentive to apprehend abscondees rather than simply using collateral to pay the face value of their bonds. Similarly, the Department claims that the Final Order will prevent bail bond companies from negotiating unfair apprehension-cost indemnity agreements. However, the record does not contain a single example of an unfair apprehension-cost indemnity agreement. It would be unnecessary and unwise for us to speculate about the possible consequences of our decision based on such a scant record. Instead, we adhere to our clear precedent, which requires us to follow the plain meaning of the statute.

5

**B.**     **The Director's interpretation of I.C. § 41-1042 prejudiced Two Jinn's substantial rights.**

"This Court has not yet attempted to articulate any universal rules to govern whether a petitioner's substantial rights are being violated under I.C. § 67-5279(4)." *Hawkins v. Bonneville Cnty. Bd. of Comm'rs*, 151 Idaho 228, 232, 254 P.3d 1224, 1228 (2011). Instead, this determination is made on a case-by-case basis. Here, the Director has forbidden Two Jinn from negotiating all of the aspects of a bail bond agreement during a single transaction. The ability to enter freely into contracts that are neither illegal nor violate important public policies is a substantial right. *See Manhattan Bldgs., Inc. v. Hurley*, 643 P.2d 87, 95 (Kan. 1982); *Nuhome Invs., LLC v. Weller*, 81 P.3d 940, 944 (Wyo. 2003). Therefore, Two Jinn's substantial rights were prejudiced.

## VI. CONCLUSION

The district court's memorandum decision affirming the Director's Final Order is reversed, and the case is remanded for entry of a judgment declaring that the plain text of I.C. § 41-1042 allows a bail bond company to contemporaneously write a bail bond and contract for a client to indemnify the company for the cost of apprehending a bail jumper. Neither party requested attorney's fees, and therefore none are awarded. However, as the prevailing party Two Jinn is entitled to its costs on appeal as a matter of course. I.A.R. 40(a); *Neighbors for Responsible Growth v. Kootenai Cnty.*, 147 Idaho 173, 177, 207 P.3d 149, 153 (2009).

Chief Justice BURDICK, Justices EISMANN, J. JONES and HORTON, CONCUR.