**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 51376**

| | | |
|---|---|---|
| GREGORY M. WILSON, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | Boise, May 2025 Term |
| | ) | |
| v. | ) | Opinion filed: September 5, 2025 |
| | ) | |
| IDAHO STATE BOARD OF | ) | Melanie Gagnepain, Clerk |
| LAND COMMISSIONERS; IDAHO | ) | |
| DEPARTMENT OF LANDS; and | ) | |
| WILLIAM FALOON, | ) | |
| | ) | |
| Respondents. | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Bonner County. Susie Jensen, District Judge.

The decision of the district court is <u>affirmed</u>.

Gregory M. Wilson, Post Falls, Appellant pro se.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondents Idaho State Board of Land Commissioners and Idaho Department of Lands. Jennifer J. Winters argued.

Fulgham Law, PLLC, Spokane, WA, for Respondent Willaim Faloon. Mischelle R. Fulgham argued.

_____

MOELLER, Justice.

This case concerns "littoral[1] rights," which are the rights of landowners to use their land bordering the shoreline of a still body of water, such as a lake. Gregory M. Wilson ("Wilson") owns property along the shore of Priest Lake in Bonner County, Idaho. In 2021, he filed an application with the Idaho Department of Lands ("IDL") seeking a permit for a submerged log structure located near the southern boundary of his lot. He alleges the structure has been there since the early 1960s.

_____

[1] "Of, relating to, or involving the coast or shore of an ocean, sea, or lake." Littoral, Black's Law Dictionary (12th ed. 2024)

IDL denied Wilson's application pursuant to Idaho Code section 58-1312,[2] concluding that Wilson had failed to provide documentation showing the structure had not been modified since 1974. Wilson contested IDL's decision. After a hearing, IDL Director Dustin Miller issued a Final Order, affirming the denial of Wilson's permit. Wilson then filed a petition for judicial review in district court. The district court affirmed IDL's Final Order and concluded that Wilson's due process rights were not violated. Wilson now appeals to this Court. For the following reasons, we affirm the district court's decision.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Wilson is a littoral landowner whose property borders the shoreline of Priest Lake in Bonner County, Idaho. The subject of this litigation is a wooden structure embedded in the lakebed near Wilson's shoreline. It is described as a "submerged log and timber framed structure" and is "fastened with spikes" to the bottom of the lake. The structure, known as a "groyne" or a "jetty," was constructed perpendicular to the shoreline to prevent erosion and allow for a sandy beach to accumulate. Wilson alleges that it has been there since the 1960s, which is prior to the enactment of the Lake Protection Act ("LPA") in 1974. The parties refer to this structure as the "pre-LPA log crib."

In 2020, Wilson filed an application (the "1081B application") with IDL for a non-navigational "riprap" encroachment permit. The encroachment "was comprised of a pre-existing log crib structure situated in the lakebed," along with cobblestones and sandbags that Wilson added on top of the structure. This was done to facilitate the accumulation of sand on his property and create a beach along the shoreline. Wilson's neighbor to the south, William Faloon ("Faloon"), filed an objection to the 1081B application. Faloon complained that the encroachment, which was near their common boundary line, caused erosion on Faloon's property. The record on appeal includes several photographs showing the structure and this erosion, which was alleged to provide Wilson's property with several additional feet of beachfront at Faloon's expense.

IDL denied Wilson's application pursuant to IDAPA 20.03.04.030.02 (2020). The Preliminary Order concluded that Wilson had "enhanced the pre-existing encroachment, in part, by adding rocks on top of the crib and the lakebed, resulting in the existing jetty." Furthermore, it found that there was "no evidence in the record that the proposed nonnavigational encroachment

[2] All references to Idaho Code section 58-1312 in this opinion are to the version that was enacted in 2006, which was in effect at all times relevant to this proceeding until it was amended during the 2024 legislative session.

2

would involve major environmental, economic, or social benefit to the general public"; therefore, the proposed encroachment did not satisfy IDAPA 20.03.04.030.02. Despite denying his 1081B application, IDL encouraged Wilson to submit a permit application for the underlying pre-existing log crib pursuant to Idaho Code section 58-1312.

On June 15, 2021, Wilson filed a second application (the "1081C application"), seeking an existing encroachment permit pursuant to Idaho Code section 58-1312. It is this application that gives rise to this litigation. Idaho Code section 58-1312 authorizes permits for existing encroachments that were "constructed prior to January 1, 1975" if the applicant provides "the board with substantive documentation of the age of the encroachment and documentation that the encroachment has not been modified since 1974." I.C. § 58-1312(1). In support of his permit application, Wilson submitted two supplemental letters, both of which indicated that the log crib structure had been embedded in the lakebed prior to 1974.

On July 8, 2022, IDL sent Wilson a letter denying his 1081C application because it found that he had not satisfied the two key requirements of Idaho Code section 58-1312: "[1] substantive documentation of the age of the encroachment and [2] documentation that the encroachment has not been modified since 1974." The letter informed Wilson that if he were dissatisfied with IDL's determination, he could appeal, in which case a hearing officer would be appointed and a hearing scheduled. Otherwise, Wilson was ordered to "remove the portions of the log structure that are below the [ordinary high-water mark]" within 30 days of receipt of the letter.

Wilson appealed. After a public hearing on the matter, the hearing coordinator issued a Preliminary Order. The Preliminary Order denied Wilson's 1081C application, concluding that Wilson had not satisfied either of the requirements of Idaho Code section 58-1312. The Preliminary Order found that the letters submitted to support the date of the encroachment did not satisfy section 58-1312's requirement of "substantive documentation" establishing the age of the encroachment. Similarly, the Preliminary Order found that the application did not establish that the encroachment has not been modified since 1974; in fact, there was ample evidence in the record to support its finding that the log crib structure had been modified since 1974.

Thereafter, IDL Director Miller issued a Final Order denying Wilson's 1081C application. Unlike the Preliminary Order, the Final Order determined that Wilson had provided substantive documentation that the log crib encroachment existed prior to 1974, thereby satisfying the first requirement of section 58-1312. However, the Final Order agreed with the hearing coordinator's

3

Preliminary Order, which concluded that Wilson had failed to demonstrate that the encroachment had not been modified since 1974. IDL noted that Wilson had "state[d] in his own words that he removed stones and pieces of concrete that were around the pre-existing log crib." Thus, the Final Order denied Wilson's 1081C application and ordered Wilson to "remove the portion of the logs below [2,437.64 feet] prior to June 1, 2023." This portion of the Final Order is referred to as the abatement order.

On February 15, 2023, Wilson filed a Petition for Judicial Review of IDL's Final Order in district court. Wilson argued that IDL's failure to comply with the procedure set forth in Idaho Code section 58-1306(b) violated his Fourteenth Amendment due process rights. Additionally, Wilson argued that IDL had erred by concluding that his adding and removing rocks and sandbags from the log crib structure constituted a modification under Idaho Code section 58-1312. Lastly, Wilson sought attorney fees.

On October 17, 2023, the district court entered its Memorandum Decision and Order Affirming IDL's Final Order. The district court held that because Wilson sought a permit under Idaho Code section 58-1312, IDL was not required to comply with the procedures and deadlines in Idaho Code section 58-1306(b). The district court also found that there was "substantial and competent evidence supporting IDL's determination" that Wilson modified the structure; therefore, it concluded IDL's decision to deny Wilson's application was not erroneous. Based on these findings, the district court ruled that Wilson's Fourteenth Amendment right to procedural due process of law was not violated. Lastly, the district court denied Wilson's request for attorney fees under Idaho Code section 12-117 because Wilson was not the prevailing party. Wilson timely appealed.

## II.    STANDARDS OF REVIEW

IDL is an instrumentality of the State Board of Land Commissioners.[3] *See* I.C. § 58-101. Pursuant to the Administrative Procedure Act, when reviewing the decision of an agency, such as IDL,

> the court shall affirm the agency action unless the court finds that the agency's findings, inferences, conclusions, or decisions are:
>
> (a) In violation of constitutional or statutory provisions;

---

[3] The Board refers to the administrative agency tasked with executing the LPA. IDL refers to the instrumentality or department that exercises the Board's authority. Despite noting this distinction, the two terms are used interchangeably throughout this opinion.

4

(b) In excess of the statutory authority of the agency;

(c) Made upon unlawful procedure;

(d) Not supported by substantial evidence on the record as a whole; or

(e) Arbitrary, capricious, or an abuse of discretion.

I.C. § 67-5279(3); *see also Byrd v. Idaho State Bd. of Land Comm'rs*, 169 Idaho 922, 928, 505 P.3d 708, 714 (2022). Additionally, the "agency action shall be affirmed unless substantial rights of the appellant have been prejudiced." I.C. § 67-5279(4).

"Where a district court acts in an appellate capacity under the [Administrative Procedure Act], this Court reviews an agency's decision independent of the district court's determination." *Byrd*, 169 Idaho at 928, 505 P.3d at 714 (citations omitted). "While the Court freely reviews questions of law, it cannot reweigh evidence on questions of fact." *Byrd*, 169 Idaho at 928, 505 P.3d at 715 (citing *Vickers v. Lowe*, 150 Idaho 439, 442, 247 P.3d 666, 669 (2011)). "The [C]ourt shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." *Id.* (quoting I.C. § 67-5279(1)). "If the agency action is not affirmed, it shall be set aside, in whole or in part, and remanded for further proceedings as necessary." I.C. § 67-5279(3). Finally, this Court "review[s] the decision of the district court to determine whether it correctly decided the issues presented to it." *Two Jinn, Inc. v. Idaho Dep't of Ins.*, 154 Idaho 1, 3, 293 P.3d 150, 152 (2013) (quoting *Elias-Cruz v. Idaho Dep't of Transp.*, 153 Idaho 200, 202, 280 P.3d 703, 705 (2012)).

### III.   ANALYSIS

Before diving into the parties' respective arguments, a brief review of the nature of littoral rights and the applicable laws governing navigable lakes is appropriate.

#### A. A Brief Overview of Littoral Rights in Idaho.

Unlike riparian rights, which concern the rights of landowners bordering flowing waters, such as creeks, rivers, or streams, littoral rights pertain to the land along the shoreline of still waters, such as lakes. "Pursuant to the public trust doctrine, the State of Idaho owns in trust the beds and banks of navigable waters for the use and benefit of the public, including the uses of navigation, commerce, and fisheries." *Byrd v. Idaho State Bd. of Land Comm'rs*, 169 Idaho 922, 928, 505 P.3d 708, 714 (2022) (citing *Newton v. MJK/BJK, LLC*, 167 Idaho 236, 242, 469 P.3d 23, 29 (2020)). While the public may own the land along the shoreline of a lake, "[t]he State's ownership of the lakebed extends up to the high water mark, while a littoral (lakeside) owner on a

navigable lake takes title down to the high water mark as it existed in 1890 when Idaho was admitted to the Union." *Byrd*, 169 Idaho at 928, 505 P.3d at 714 (citations omitted). Thus, "a littoral owner's rights to access and use the waters of the lake depend on his adjacency to that navigable lake" and the historic high water level of the lake at statehood. *Id.* at 928–29, 505 P.3d at 714–15 (citations omitted).

The "ordinary high water mark" ("OHWM") of a navigable lake is "the high water elevation in a lake over a period of years, uninfluenced by man-made dams or works, at which elevation the water impresses a line on the soil by covering it for sufficient periods to deprive the soil of its vegetation and destroy its value for agricultural purposes." I.C. § 58-1302(c). Meanwhile, the "artificial high water mark" ("AHWM") is the "high water elevation above the natural or ordinary high water mark resulting from construction of man-made dams or control works and impressing a new and higher vegetation line." I.C. § 58-1302(d). Importantly, while the State has title to the lakebed up to the OHWM, its regulatory authority extends beyond the OHWM, to "the lands lying between the natural or ordinary high water mark [OHWM] and the artificial high water mark [AHWM], if there be one." I.C. § 58-1302(b).

"Priest Lake has been [considered] a navigable lake since Idaho became a state in 1890." *State v. Hudson*, 162 Idaho 888, 889, 407 P.3d 202, 203 (2017). While most navigable lakes in Idaho have both ordinary high water marks and artificial high water marks, Priest Lake is unique because "the actual location of Priest Lake's high water mark has not been adjudicated." *Byrd*, 169 Idaho at 929, 505 P.2d at 715. However, "[t]he construction of a dam in 1950 stabilized Priest Lake's elevation at approximately 2,437.64 feet from the summer months of July to September since 1951." *Id*. Irrespective of whether 2,437.64 feet is considered the OHWM or the AHWM of Priest Lake, we have previously held that IDL has regulatory authority over Priest Lake below the 2,437.64 feet mark. *Id*.; *see Hudson*, 162 Idaho at 893, 407 P.3d at 207; I.C. § 58-1302(b).

With this background in mind, we turn to the parties' arguments.

**B. Wilson did not preserve his argument that Priest Lake's AHWM is 2,437.64 feet above sea level.**

Wilson argues that IDL erred in finding that his log crib encroachment was located below the Priest Lake OHWM, which he maintains presented a mixed question of fact and law. Instead, he argues that "[p]hotographic and testimonial evidence verifies that his encroachment is located *below* the summer pool elevation [of] 2,437.64 feet, the *AHWM*." (Emphasis added). Thus, Wilson asserts on appeal that 2,437.64 feet should be considered Priest Lake's AHWM, not its OHWM.

IDL counters that Wilson did not contest the location of Priest Lake's OHWM or AHWM below; therefore, this is a new argument that this Court should not consider on appeal.

We preliminarily address this preservation issue because many of Wilson's subsequent arguments flow from his contention that 2,437.64 feet represents the AHWM. Indeed, Wilson claims that he has a protected property interest in the land lying between the OHWM and AHWM and that IDL's actions in this case amounted to a regulatory taking of that land. As explained below, we agree with IDL that Wilson failed to preserve this argument and, consequently, he is precluded from raising this argument on appeal.

"[S]ubstantive issues may not be raised for the first time on appeal because allowing new issues on appeal would change the function of the appellate courts[.]" *Taylor v. Taylor*, 169 Idaho 806, 813, 504 P.3d 342, 349 (2022) (alterations in original) (quoting *State v. Gonzalez*, 165 Idaho 95, 98, 439 P.3d 1267, 1270 (2019)). Although this Court can consider "refined legal arguments regarding an issue heard and decided by the court below, . . . in fairness to the district court and the opposing party, [it] cannot usurp the district court's role by deciding new legal issues in the first instance." *Id.* at 813–14, 504 P.3d at 349–50 (second alteration in original) (quoting *Siercke v. Siercke*, 167 Idaho 709, 716, 476 P.3d 376, 383 (2020)). Accordingly, this Court will only consider a refined issue that was raised below when the "substantive issue and the party's position on that issue [must] remain the same." *Id.* (quoting *Siercke*, 167 Idaho at 715–16, 476 P.3d at 382–83).

Prior to this appeal, Wilson failed to discuss or even dispute the location of Priest Lake's OHWM and AHWM in the application proceeding. In his request for a contested case hearing in response to IDL's July 8, 2022, letter, Wilson stated that his appeal would cover his compliance with Idaho Code section 58-1312's requirements and IDL's demolition request. He never asserted that he was contesting or attempting to adjudicate Priest Lake's OHWM or AHWM. Wilson also failed to question the location of Priest Lake's OHWM or AHWM at the contested case hearing. Wilson only argued that he believed the hearing was "illegal and void" because it was beyond the statutory period for holding the hearing under Idaho Code section 58-1306(c). Then, in his Petition for Judicial Review, Wilson averred:

> The existing encroachment is a submerged log and timber framed structure fastened with spikes (the "Encroachment") embedded in the lakebed *below the Ordinary High Water Mark* ("OHWM") near [Wilson's] southern littoral boundary

7

with adjacent owner Faloon. *A portion* of the wooden structure *is situated above the OHWM.*

(Emphasis added).

Based on the foregoing, we conclude that Wilson never argued that 2,437.64 feet should be considered the AHWM, instead of the OHWM, until he appealed. This Court will "not reverse a trial court's decision based on an argument that was not presented below. To properly preserve an issue for appellate review, both the issue and the party's position on the issue must be raised before the trial court[.]" *Skehan v. Idaho State Police, Bureau of Crim. Identification, Idaho Cent. Sex Offender Registry*, 173 Idaho 321, 327, 541 P.3d 679, 685 (2024) (alteration in original) (internal quotation marks and citations omitted). We conclude that this is not merely a refinement of the issues raised below; instead, it is a new position on an issue that was uncontested below, which our preservation rules do not permit.

Moreover, even if Wilson had preserved this issue, IDL's actions were permissible regardless of whether 2,437.64 feet is the OHWM or the AHWM. *See Hudson*, 162 Idaho at 893, 407 P.3d at 207 (holding in a dispute concerning Priest Lake that the district court did not err in granting the State partial summary judgment because "whether 2,437.64 feet was the OHWM or the AHWM is not an issue of material fact because the State has the authority to regulate encroachments under both marks"). Thus, it makes no difference whether 2,437.64 feet is the OHWM or the AHWM; IDL has authority to regulate encroachments *below* either mark. Inasmuch as Wilson has admitted that at least part of his encroachment was below both marks, his concerns about the actual location of the OHWM or the AHWM are unavailing.

### C. IDL properly denied Wilson's 1081C existing encroachment application pursuant to Idaho Code section 58-1312.

Because we review an agency's decision independent of the district court's determination, we next turn to the errors Wilson alleges IDL committed. *See Byrd*, 169 Idaho at 928, 505 P.3d at 714 (citations omitted). Here, Wilson argues IDL erroneously denied his existing encroachment permit application submitted under Idaho Code section 58-1312. He maintains IDL's decision was erroneous because: (1) adding sandbags and cobblestone to his log crib structure and later removing these materials does not constitute a modification under section 58-1312; (2) the Board did not employ the right procedures in processing his 1081C application, which deprived him of due process of law under the Fourteenth Amendment; and (3) IDL's Final Order improperly

included an abatement demand by ordering him to remove "the portion of the logs below" 2,437.64 feet.

The LPA provides the Board with the authority to regulate "all encroachments upon, in or above the beds or waters of navigable lakes of the state . . . ." I.C. § 58-1301; *see* I.C. § 58-1303; Act of Apr. 5, 1974, ch. 243, § 1, 1974 Idaho Sess. Laws 1608, 1609. Pursuant to its authority to regulate encroachments, the Board promulgated certain regulations set forth in IDAPA 28.03.04 *et seq*. Under the LPA and IDAPA, the Board's permitting authority generally falls into two categories: (1) encroachments constructed prior to January 1, 1975, which pre-date enactment of the LPA (i.e., "existing" or "preexisting" encroachments), and (2) "new" encroachments constructed on or after January 1, 1975. I.C. §§ 58-1312, 58-1306; IDAPA 20.03.04.012.03. At issue in this case is a preexisting encroachment governed by Idaho Code section 58-1312.

When the LPA was enacted in 1974, preexisting encroachment owners only had to submit a notification form containing "information concerning the encroachment" to receive a permit for their encroachment. In 2006, the Idaho Legislature changed this practice since preexisting encroachment owners had more than 30 years to submit the form. The legislature enacted Idaho Code section 58-1312, which required owners of encroachments that predated 1974, to apply for a permit by providing "substantive documentation of the age of the encroachment and documentation that the encroachment has not been modified since 1974." *See* Act of Mar. 22, 2006, ch. 135, 2006 Idaho Sess. Laws 390 (codified at I.C. § 54-1312(1)).

In 2021, when Wilson made his application for an existing encroachment permit, section 58-1312 stated:

> Unless otherwise prohibited, every person seeking a permit for a navigational or nonnavigational encroachment constructed prior to January 1, 1975, shall provide the board with *substantive documentation of the age of the encroachment and documentation that the encroachment has not been modified since 1974*. Persons providing such documentation shall receive an encroachment permit and shall not be required to pay the application and publication fees established in this chapter. Such substantive documentation shall include dated aerial photographs, tax records, or other historical information deemed reliable by the board.

I.C. § 58-1312(1) (2006) (emphasis added). In sum, based on the version of section 58-1312 in effect at the time of Wilson's application, IDL could only grant an existing encroachment permit application when the applicant provides (1) substantive documentation of the age of the encroachment *and* (2) documentation that the encroachment has not been modified since 1974.

In its Preliminary Order, IDL denied Wilson's existing encroachment application because it found that Wilson did not establish either element. It concluded Wilson had provided neither substantial documentation of the age of the encroachment nor documentation that the encroachment had not been modified since 1974. After reviewing the administrative record before him, IDL Director Miller disagreed that Wilson had not satisfied the first step under Idaho Code section 58-1312. Director Miller concluded that the letters Wilson provided in support of his application provided substantial evidence that the encroachment predated 1974. However, Director Miller agreed with the ultimate recommendation contained in the Preliminary Order and found that Wilson had not complied with Idaho Code section 58-1312 because he did not provide documentation that the encroachment had not been modified. Accordingly, the Director denied Wilson's application.

On appeal, Wilson argues that IDL erred in denying his 1081C application for three reasons. First, he argues that he did not modify his embedded log crib structure. Second, Wilson argues that he was entitled to some of the procedures outlined in Idaho Code section 58-1306 when IDL processed his application. Third, he asserts that the Final Order's abatement order exceeded IDL's statutory authority. We will address each contention in turn.

1. *IDL's finding that Wilson modified his log crib encroachment is supported by substantial and competent evidence.*

Wilson maintains that because he removed the cobblestones and sandbags he added, and returned the log crib back to its original footprint after his first application in 2020 was denied, he should not be deemed to have "modified" the structure under Idaho Code section 58-1312. IDL counters that there is substantial and competent evidence in the record that Wilson modified the pre-LPA log crib without a permit in violation of the LPA; therefore, his existing encroachment permit was appropriately denied.

As previously noted, the version of Idaho Code section 58-1312 in effect at the time Wilson's applications were submitted specified that, "every person seeking a permit for a navigational or nonnavigational encroachment constructed prior to January 1, 1975, shall provide the board with substantive documentation of the age of the encroachment and documentation that the encroachment has not been modified[4] since 1974." I.C. § 58-1312(1) (2006). Upon reviewing

---

[4] Unfortunately, the phrase "has not been modified" was not defined until the 2024 amendments. The statute now defines the phrase to mean: "the *overall footprint* of the encroachment on the lake bed *has not been expanded* in dimension or height or changed in orientation or location." I.C. § 58-1312(1) (2024 Supp.) (emphasis added).

the record, we conclude that substantial evidence supports the finding in IDL's Final Order that Wilson modified the structure within the meaning of Idaho Code section 58-1312.

At the public hearing, Wilson described how he removed stones and pieces of concrete from the pre-existing log crib. He also admitted this in his Declaration, stating:

> In April 2020, in response to the Order, *Applicant removed the "Riprap" stones* from his lakefront lot but left the underlying Pre-Lake Protection Act ("LPA") wooden crib structure in place. *The Riprap stone structure was comprised of cobblestones placed over a log crib structure* embedded in the lakebed.

(Emphasis added). The cobblestones Wilson had earlier placed over the log crib structure expanded the height of the original structure. Wilson does not deny that these actions amounted to modifications; however, he points to his later removal of the stones and claims he returned the structure to its original dimensions. Thus, he argues that no modification occurred. Notwithstanding Wilson's efforts to undo his admitted modifications, this does not change the fact that he initially modified it by elevating the structure. However, because the additions to the log crib constituted modifications that admittedly occurred after January 1, 1974, Wilson does not qualify for an existing encroachment permit under the plain language of section 58-1312.

For these reasons, we agree with the district court that the record confirms the Director's conclusion that Wilson's additions to the encroachment increased the height of the original log crib structure, even if it was only for a brief time. Accordingly, we will not disturb IDL's conclusion that Wilson did not satisfy the second element of Idaho Code section 58-1312.

2. *IDL properly declined to apply the procedures outlined in Idaho Code section 58-1306 because Wilson's application sought a permit under Idaho Code section 58-1312.*

Wilson further argues that IDL's Final Order should be reversed because IDL should have complied with procedures in Idaho Code section 58-1306 when processing his application and appeal. Specifically, Wilson maintains that IDL's failure to timely publish a Notice of Application under Idaho Code section 58-1306(b) and hold a hearing under subsection (c) substantially prejudiced his rights and amount to a denial of his right to due process.

IDL responds by noting that it did not have to comply with the procedural requirements of Idaho Code section 58-1306 when processing an application pursuant to section 58-1312. The district court agreed with IDL on this point and held that "Wilson sought to permit an existing structure under Idaho Code [section] 58-1312[;] therefore IDL was not required to comply with Idaho Code [section] 58-1306(b)." After reviewing Wilson's application and the relevant statutes, we agree with IDL and the district court and hold that IDL was not required to employ the

11

procedures enumerated in Idaho Code section 58-1306 when processing Wilson's application for an existing encroachment permit brought pursuant to Idaho Code section 58-1312.

Idaho Code section 58-1306 sets forth various procedural requirements for processing certain nonnavigational and navigational encroachments. For example, section 58-1306(b) requires that within 10 days of receipt of an application, IDL shall publish a notice of the application in a newspaper having general circulation in the county where the application is proposed. I.C. § 58-1306(b). Additionally, if an objection to the proposed encroachment is filed and a hearing requested, the hearing must be held no later than 90 days from the date of filing of the application, and the board must render a decision within 30 days following conclusion of the hearing. I.C. § 58-1306(c). However, these procedural requirements only apply to applications "submitted under subsection (a)" of Idaho Code section 58-1306. Subsection (a) enumerates applications for "construction, enlargement or replacement of a nonnavigational encroachment, a commercial navigational encroachment, a community navigational encroachment, or for a navigational encroachment extending beyond the line of navigability . . . ." I.C. § 58-1306(a). Absent from this list are applications for pre-existing encroachment permits. Such applications are governed by a separate section, section 58-1312, which sets forth all the requirements for obtaining a permit based on an existing encroachment.

Here, Wilson provides no legal basis or authority to support his position that the procedures in section 58-1306 apply to an application under section 58-1312. Nor does he argue that the procedures set forth in Idaho Code section 58-1312 are ambiguous, which might require us to turn to section 58-1306 for clarity. Importantly, his argument contradicts the plain language of Idaho Code section 58-1306(a) and (b), which specifies that the outlined procedural requirements only apply to applications for "construction, enlargement or replacement of a nonnavigational encroachment, a commercial navigational encroachment, a community navigational encroachment, or for a navigational encroachment extending beyond the line of navigability . . . ." I.C. § 58-1306(a). Absent any statutory language indicating the procedures set forth in Idaho Code section 58-1306(b) apply to existing encroachment permits processed under section 58-1312, or any authority or cogent argument as to why these procedures should apply, we find no error in IDL's processing Wilson's application under section 58-1312.

*3. While IDL did not err by ordering Wilson to remove the portion of the encroachment below 2,437.64 feet, it cannot enforce that order in this action.*

Lastly, Wilson argues that the Board erred when it included an abatement demand in its Final Order, which required him to remove the logs below 2,437.64 feet. He maintains that the abatement order exceeded the State's statutory authority under Idaho Code section 58-1308 because it ordered a form of injunctive relief which only a district court could order.

Idaho Code section 58-1308 sets forth the penalties for violations of the LPA. Section 58-1308 provides that:

> (1) *Any person who violates any* of the provisions of this chapter or any valid and authorized regulation, rule, permit or *order of the board*, *or*, where notified by personal service or certified mail of such violation and *thereafter fails to cease and desist therein or obey an order of the board* within the time provided in such notification or within thirty (30) days of service of such notice if not otherwise provided, shall be subject to a civil penalty of not less than one hundred fifty dollars ($150) nor more than two thousand five hundred dollars ($2,500). Such civil penalty may be assessed by the board in conjunction with any other administrative action; provided, that no civil penalty shall be assessed unless the person was given notice and opportunity for a hearing pursuant to the administrative procedure act as set forth in chapter 52, title 67, Idaho Code. *The board shall have authority and it shall be its duty to seek injunctive relief from the appropriate district court to restrain any person from encroaching on, in or above the beds or waters of a navigable lake* until approval therefor has been obtained as provided in this chapter.

I.C. § 58-1308 (emphasis added). This section empowers the Board in three ways. First, section 58-1308 empowers the Board to impose civil penalties when any person has violated the LPA or a Board's order. *Id.* Second, the Board can issue orders and require applicants to "cease and desist" from violating the LPA. *Id.* And third, the Board is authorized to seek injunctive relief as an additional remedy, but it must seek this relief in district court in a *separate* action. *Id.* When the Board seeks injunctive relief in a separate action, the court may also order "[a]ny person legally found to be wrongfully encroaching on, in or above the beds or waters of a navigable lake" to "restore the lake to as near its condition immediately prior to the unauthorized encroachment . . . ." I.C. § 58-1309.

Section 58-1308 does not state, as Wilson alleges, that the Board cannot issue an abatement order. Rather, it grants the Board authority to seek redress for violations of the LPA by issuing an abatement order requiring the applicant to remove encroachments that violate the LPA. However, the Board cannot compel Wilson to comply with an abatement order during an application proceeding; instead, it must seek enforcement of its order in a separate district court action to

restore the lake to its original condition. Thus, any injunctive relief in this matter must be sought in a separate and subsequent action brought by the Board. IDL has acknowledged this point and recognizes that it will have to bring such an action if Wilson does not comply with its abatement order.

**D. Wilson did not preserve his regulatory taking argument.**

On appeal, Wilson extended his argument regarding the abatement order, contending it amounts to a regulatory taking under the Fifth and Fourteenth Amendments. IDL counters that Wilson did not raise this argument below, so it is not properly preserved for this Court's consideration. In reply, Wilson says that it was preserved because he argued below that IDL's abatement order was an unlawful award of injunctive relief.

As stated previously, while parties may refine their arguments on appeal, this Court will not "usurp the district court's role by deciding new legal issues in the first instance." *See Taylor v. Taylor*, 169 Idaho 806, 813–14, 504 P.3d 342, 349–50 (2022) (quoting *Siercke v. Siercke*, 167 Idaho 709, 716, 476 P.3d 376, 383 (2020)). Upon review of the record, we agree with IDL that Wilson did not argue below that the abatement order amounted to an unconstitutional regulatory taking. Neither is his regulatory taking argument a mere refinement of his abatement order arguments below. Therefore, we will not consider Wilson's regulatory taking argument in the first instance here.

**E. The district court correctly concluded that Wilson's Fourteenth Amendment due process rights were not violated.**

On appeal, Wilson spent much of his briefing and oral argument maintaining that IDL's denial of his 1081C application violated his due process rights under the Fourteenth Amendment. When he brought his petition for judicial review to the district court, he properly asserted this claim for the first time. Now, on appeal, he argues that the district court failed to apply Idaho's "Two-Step Constitutional Due Process Analysis" as set forth in *Newton v. MJK/BJK, LLC*, 167 Idaho 236, 469 P.3d 23 (2020), and in *Guzman v. Piercy*, 155 Idaho 928, 318 P.3d 918 (2014). IDL counters that the district court correctly found that IDL did not violate Wilson's right to procedural due process of law because he does not have a protected property interest in his log crib and he received notice and an opportunity to be heard both in the IDL's processing of Wilson's application, and in the district court's review of IDL's decision. The district court concluded that "[u]nder the facts in the record, Mr. Wilson's [Fourteenth] Amendment right to procedural due process of law was not violated and his application was lawfully processed."

The Fourteenth Amendment Due Process Clause requires that "there must be some process to ensure that the individual is not arbitrarily deprived of his rights in violation of the state or federal constitutions. This requirement is met when the defendant is provided with notice and an opportunity to be heard." *State v. Rhoades*, 121 Idaho 63, 72, 822 P.2d 960, 969 (1991). When determining "whether an individual's Fourteenth Amendment due process rights have been violated," this Court engages in a "two-step analysis." *Newton*, 167 Idaho at 244, 469 P.3d at 31. First, the Court determines whether an individual is being deprived of a protected property or liberty interest under the Fourteenth Amendment. *Id*. Whether a property right exists is a matter of state law and is determined by an "examination of the particular statute, rule or ordinance in question." *Bradbury v. Idaho Jud. Council*, 136 Idaho 63, 73, 28 P.3d 1006, 1016 (2001) (citing *Ferguson v. Bd. of Trs. of Bonner Cnty. Sch. Dist. No. 82*, 98 Idaho 359, 363, 564 P.2d 971, 975 (1977)). Second, the Court considers what process is due. *Newton*, 167 Idaho at 244, 469 P.3d at 31. "Only after a court finds a liberty or property interest will it reach the next step of the analysis in which it determines what process is due." *Id*. at 244–45, 469 P.3d at 31–32 (quoting *Bradbury*, 136 Idaho at 73, 28 P.3d at 1016). Due process is not a concept to be applied rigidly but instead "a flexible concept calling for such procedural protections as are warranted by the particular situation." *Boise Orthopedic Clinic v. Idaho State Ins. Fund* (*In re Wilson*), 128 Idaho 161, 167, 911 P.2d 754, 760 (1996). Ultimately, "[a] procedural due process inquiry is focused on determining whether the procedure employed is fair." *Bradbury*, 136 Idaho at 72, 28 P.3d at 1015.

As to the first due process step, Wilson alleges that he has a protected property interest in his log crib pursuant to Idaho Code section 58-1310. He maintains that if his "encroachment was physically located below pool elevation [of] 2,437.64 feet, and the encroachment satisfied the I.C. [section] 58-1310 conditions, then Wilson has a statutorily protected property interest as a matter of law." Idaho Code section 58-1310 provides that:

> This act shall not operate or be construed as to impair, diminish, control or divest any existing or vested water rights acquired under the laws of the state of Idaho or the United States . . . *nor shall this act be construed to impair existing nonnavigational encroachments not extending beyond the natural or ordinary high water mark if they have been in existence at least five (5) years* prior to the effective date of this act nor any other existing nonnavigational encroachment unless action to abate the same by legal proceedings be instituted by the board within three (3) years of the effective date of this act.

I.C. § 58-1310 (emphasis added). The problem with Wilson's argument is that he has not satisfied the section 58-1310 conditions. Examining section 58-1310, it does not independently create a

property interest as Wilson suggests. Section 58-1310 certainly recognizes the existence of rights created under Idaho or United States law, such as the littoral rights recognized by the LPA, but it has an important qualifier. Section 58-1310 only protects those nonnavigational encroachments that do not extend beyond the natural or ordinary high water mark. As noted, while Priest Lake's OHWM and AHWM have not been adjudicated, this Court has stated that irrespective of whether 2,437.64 feet is the OHWM or the AHWM, the State has authority to regulate encroachments below both marks. *See State v. Hudson*, 162 Idaho 888, 893, 407 P.3d 202, 207 (2017); I.C. § 58-1302(b). The record on appeal confirms that Wilson's log crib extends below either mark. Hence, Wilson does not have a protected property interest in his log crib under section 58-1310.

Absent a protected property interest in his encroachment lying below 2,437.64 feet, our due process inquiry could end at the first step. Nevertheless, we take a moment to point out that, even under the second part of the due process analysis, Wilson had numerous opportunities to be heard. On December 19, 2022, IDL conducted a public hearing where Wilson contested the denial of his application in multiple proceedings. Thereafter, Wilson filed a petition for judicial review, which afforded him additional opportunities to be heard before the district court. Based on these facts, we conclude that the procedure employed to review Wilson's existing encroachment application has been more than fair and consistent with constitutional standards. Therefore, we affirm the district court's conclusion that Wilson was afforded adequate procedural due process of law.

### F. Attorney Fees and Costs

All parties have requested attorney fees and costs on appeal. However, Wilson is not entitled to fees or costs since he did not prevail. IDL, as the prevailing party, requests attorney fees on appeal pursuant to Idaho Code sections 12-117 and 12-121, and Appellate Rule 41. Respondent Faloon also requests attorney fees and costs pursuant to Idaho Code section 12-117.

Section 12-117 awards attorney fees to the prevailing party "in any proceeding involving as adverse parties a state agency . . . and a person" if "the nonprevailing party acted without a reasonable basis in fact or law." I.C. § 12-117. "The standard for awarding attorney fees under Idaho Code section 12-121 is essentially the same as that under Idaho Code section 12-117." *Coeur d'Alene Tribe v. Denney*, 161 Idaho 508, 525, 387 P.3d 761, 778 (2015). Thus, this Court will award attorney fees to the prevailing party under either section 12-117 or 12-121 if "the

case was brought, pursued or defended frivolously, unreasonably or without foundation." *Id*. at 525–26, 387 P.3d at 778–79.

As noted above, Wilson has raised several unpreserved arguments on appeal, asserted unmeritorious arguments challenging IDL's authority to regulate the beds of navigable lakes under the LPA, and at times merely asked us to second-guess the Director's findings and conclusions despite the record firmly supporting his decision. For these reasons, we award IDL attorney fees on appeal. As the prevailing party, IDL is also entitled to costs under Idaho Appellate Rule 40 as a matter of course.

Finally, Respondent Faloon has also requested attorney fees and costs pursuant to Idaho Code section 12-117. Faloon acknowledges that he is not "adverse" to IDL in the caption of this case, but maintains that he is adverse to IDL due to its "fail[ure] to enforce its regulations and fail[ure] to remove the unlawful and unpermitted encroachment violation," which "continues to erode, damage, and harm Faloon's beach." Additionally, Faloon argues that because Wilson acted without a reasonable basis in law or fact, and it was Wilson who named Faloon as a respondent, "it logically follows that Faloon should not be precluded from recovering" costs and fees.

Contrary to his contention, Faloon is not "adverse" to IDL for purposes of Idaho Code section 12-117. *See Hill v. Blaine County*, 173 Idaho 856, 868, 550 P.3d 264, 276 (2024) (holding that "Greenhorn, who intervened on the side of the County, is not 'adverse' to the County and therefore cannot be awarded attorney fees pursuant to Idaho Code section 12-117.") (citations omitted). Faloon and IDL's arguments on appeal were substantially the same. Any adversarial posture between Faloon and IDL at this stage of the case appears contrived by Faloon to recover fees in an appeal where he was not a necessary or proper party.

A "necessary party" is one "without whom the cause cannot proceed to final determination." *Taylor v. Lytle*, 26 Idaho 97, 105, 141 P. 92, 95 (1914). A "proper party" is a party "without whom the cause might have proceeded, but whose presence will allow a decree or judgment to more clearly settle the controversy between all the parties." *Id.* Although Faloon objected to Wilson's 1081B application in 2020, he was not a party to Wilson's 1081C application in 2021. On appeal, his participation was not necessary to any of our rulings, nor is the controversy any more clearly settled because Faloon was added as a party.

We are not convinced Faloon was either a necessary or proper party to this appeal; however, neither IDL nor Wilson have challenged Faloon's participation on that basis.

17

Nevertheless, because it cannot be reasonably asserted that Falloon was adverse to IDL during this appeal, it does not follow that he prevailed against IDL for purposes of section 12-117. Therefore, we deny Faloon's request for costs and fees on appeal.

## VI. CONCLUSION

For the reasons stated above, we conclude that IDL and the Board followed the proper procedures and statutory requirements in reviewing Wilson's application for an existing encroachment permit under the LPA. *See* I.C. § 58-1312. Therefore, we affirm the district court's decision upholding the Director's order denying Wilson's 1081C application. We also affirm the district court's decision that Wilson was not deprived of due process of law in the proceedings before IDL. Attorney fees and costs are awarded to IDL.

Chief Justice BEVAN, Justices BRODY, ZAHN, and MEYER CONCUR.